CLIETT *et al. v.* FIRST NAT. BANK OF WEST POINT *et al.*

(Division B. May 30, 1938. Suggestion of Error Overruled June 20, 1938.)

[181 So. 713. No. 33140.]

J. E. Caradine and B. H. Loving, both of West Point, for appellants.

564

Frank A. Critz, of West Point, for appellees.

**Ethridge, P. J.,** delivered the opinion of the court.

The appellants, S. A. Cliett, and his wife, Careta Lofton Cliett, resident citizens of Clay county, Mississippi, filed a bill in the Chancery Court of that county for an injunction against foreclosure of a deed of trust, and to establish a homestead right in the land embraced in the deed of trust. While the bill was originally filed under the moratorium act of 1934, Laws 1934, c. 247, by agreement of all parties and the court, the issue was tried under chapter 287 of the Laws of 1936, that chapter having become operative at the time of the trial. The appellants were formerly owners in fee of 220 acres of land described in the bill of complaint, and occupied prior to 1936 as a home or homestead. In 1926 S. A. Cliett and his wife moved to West Point, Mississippi, which was a more convenient location for the business of buying and selling cattle in which Mr. Cliett was engaged; and in 1928 they both registered there as voters.

On February 13th, 1930, S. A. Cliett, owner of the land involved in this cause, executed a deed of trust to F. A. Critz, trustee, to secure an indebtedness to the bank, borrowing at the time $1,500.00, in which deed of trust it was stipulated: ''In consideration of one dollar I convey and warrant to Frank A. Critz, Trustee, the following described real estate situated in Clay county, State of Mississippi, not used by me as a homestead, and described as follows,'' describing the 220 acres of land. His wife, Careta Lofton Cliett, did not sign this deed of trust, and the proof shows that she did not know of its execution at the time.

Subsequent to the execution of this deed of trust S. A. Cliett and his wife returned to their former home and occupied it. In 1932 the bank sought to have the deed of trust renewed, but the wife, Careta Lofton Cliett, re-

fused to sign it. Thereafter the bank, through its trustee, proceeded to advertise the land for sale on the 24th of December, prior to which date the bill was filed, seeking the benefit of the moratorium statute, and to have the land embraced in the deed of trust to the extent of 160 acres declared a homestead. The evidence shows that at the time of the giving of the original deed of trust the president and another person in the bank who took the acknowledgment to the deed of trust, asked S. A. Cliett if the land was a homestead, and he replied that it was not. On the hearing the Chancellor decreed that the homestead had been abandoned by the removal therefrom, and by the act of S. A. Cliett in executing a deed of trust, representing that it was not his homestead. The Chancellor postponed the date of the sale under the moratorium act for some months, but required the appellants to deliver to the bank one-fourth of the cotton and one-third of the corn produced on the said lands embraced in the deed of trust. And from this decree the appellants prosecuted the appeal to this Court.

We think that under facts stated the Chancellor was correct in holding that the homestead had been abandoned. In Ritter et al. v. Whitesides, 179 Miss. 706, 176 So. 728, it was held that a husband has a right to select a homestead and to move from one and select another. This right, of course, has some limitations in favor of the wife, and she has a right in a homestead which equity will protect at her instance in some cases. But when the husband moves from the homestead with the consent of the wife, selects another place to live, and then encumbers the former homestead while neither he nor his wife are living there, securing a loan on the representation that the homestead did not exist, the right to the homestead is waived in favor of the mortgage or deed of trust so given. In Ritter et al. v. Whitesides, supra, it is said in the fourth syllabus: ''Recital by husband in trust deed executed by him alone, that land involved was no part of his homestead, was sufficient evidence of his

selection of new homestead, when he and wife were, in fact, occupying other land for living purposes, and recordation of such trust deed prevented the parties from acquiring any but subordinate rights in the land.'' Of course, the removal from a homestead by reason of casualty and necessity, with the intention of returning whenever conditions make it possible for the parties to do so, which intention has not been abandoned, does not lose the homestead rights to the owners. See Jackson v. Coleman, 115 Miss. 535, 76 So. 545; Gilmore v. Brown, 93 Miss. 63, 46 So. 840; Campbell v. Adair, 45 Miss. 170. Many other cases could be cited on the proposition, but we deem the above sufficient to show that the Chancellor's decision was based on sufficient evidence, and his decree as to the homestead was sound.

It is also complained that the Chancellor erred in directing the payment of one-fourth of the cotton and one-third of the corn as a condition of granting the relief under the moratorium act, chapter 247, Laws of 1934. Section 4 of that act provides: ''Suits for the foreclosure of mortgages and deeds in trust shall be deemed ready for final hearing at any time after the expiration of thirty days from the completion of the service of summons on all parties. On the hearing the court or chancellor in vacation shall receive evidence tending to establish the reasonable normal actual value of the mortgaged property, and may fix an upset price thereon; shall determine the reasonable value of the income on said property, or if it has no income, then the reasonable rental value, and in lieu of a present order of sale, shall direct and require the mortgagor, or those interested through or under him, to pay all or a reasonable part of said income or rental value in or toward the payment of taxes, insurance and interest on the mortgage indebtedness, together with a reasonable sum for the upkeep of the property. Said payments shall be made at such times and in such manner as shall be fixed and determined and ordered by the court or chancellor in vacation and as, according

to the circumstances, may appear just and equitable, for a term not to exceed two years. After the expiration of two years, if the principal and any past due interest, taxes, and the like, have not been paid, a final order for sale may be made.''

It will be seen from this provision that the Chancellor is authorized to require the parties seeking relief under the moratorium act ''to pay all or a reasonable part of said income or rental value in or toward the payment of taxes, insurance and interest on the mortgage indebtedness, together with a reasonable sum for the upkeep of the property.'' We think the Chancellor was well within the law in requiring the plaintiffs to pay said amount under this section.

It is also argued that the Chancellor did not, in the decree on the value, fix an upset price on the property. The language of the act, ''and may fix an upset price thereon,'' is permissive, and not obligatory; the Chancellor has control of the matter, and may pass upon the adequacy of the price after the sale is made, and if it is grossly insufficient may set aside such sale and order a resale. It would, of course, be proper in all cases to fix the upset price so as to secure a fair value at the sale of the property, but the statute does not make this procedure compulsory.

We find no reversible error in the case, and the judgment is affirmed.

Affirmed.