LIVELAR *v.* KEPNER, et al.

No. 42402          November 5, 1962          146 So. 2d 346

*Daniel, Coker & Horton,* Jackson, for appellant.

*Fancher & Fancher,* Canton, for appellees, Lester M. Kepner and Mary H. Kepner.

*Nelson Cauthen,* Canton, for devisees and executors under will of E. P. Livelar.

Lee, P. J.

Mrs. Effie C. Livelar, on August 27, 1959, filed her bill in the chancery court against Frederick P. Livelar, her husband, and Lester M. Kepner and wife, Mary H. Kepner, to cancel a deed for 160 acres of land, as therein described, executed by her husband to the Kepners on December 20, 1951. She charged that this property was, and had been, the homestead of her and her husband and that she had not signed the deed, and had never released her rights therein. She also sought other relief.

The complainant further alleged that, in 1952, she had filed a suit for separate maintenance against her husband. Copies of such bill, answer of her husband and his answers to her interrogatories, and of the decree of date of November 24, 1953, awarding her $175 per month until further order of the court, were attached to the complaint as exhibits.

The answer of the Kepners denied that the Livelars maintained their homestead on the 160 acres until December 6, 1951. They said that, on November 7, 1951, the Livelars acquired a house and lot in Canton and moved into it as their homestead on November 14, 1951;

that shortly thereafter, Livelar called upon Mrs. Livelar to reside with him in the new homestead, and she wilfully refused to do so; and that the 160 acres was no longer a homestead after November 14, 1951. They charged that they made substantial improvements on the place; that Mrs. Livelar visited them on many occasions, observed the improvements being made, commented favorably thereon, voiced no objection thereto, and asserted no claim to the property. They further said that they bought the 160 acres on December 20, 1951, in good faith; that Mrs. Livelar, subsequently by her separate maintenance suit, received a decree in settlement of her rights; and that the assertion of homestead rights was repugnant to the relief granted her in the separate maintenance suit. However, in event the court should hold their deed to be void, then by their cross-bill, they prayed that the large and necessary expenditures, which they had made and which were set out in detail, together with the purchase price of the land, should be declared a lien in their favor, and, unless paid within a reasonable time, the cross-defendants should be declared to be the true owners of the property.

The separate answer of defendant Livelar admitted that he and his wife lived on the 160 acres as a homestead, but denied that they were living on it on December 6, 1951. He alleged that both he and his wife moved from the property on November 14, 1951, and both of them abandoned it. He denied that the deed to the Kepners was void. He alleged that he moved to the property in Canton for reasons of health, intending to take his wife with him, make it their permanent homestead, and abandon the farm property; that his wife refused to sign the deed unless he would give her one-half of the money; that he called upon his wife to accompany him and help to look after him in his infirmity, but she refused to perform her duties to him; and that on December 20,

1951, when he sold the property, it was vacant, wholly abandoned, and no part of his homestead.

On September 15, 1960, it was suggested to the court that the defendant Livelar died on April 30, 1960; and, by decree of October 6, 1960, the cause was revived in the named successors in interest. Additional pleadings were filed by all parties in interest to conform to this change in status.

The deed records of Madison County undisputedly reflected the following: (1) On September 4, 1940, F. P. Livelar purchased the 160 acres of land in controversy, and he and his wife moved upon it. (2) On November 7, 1951, F. P. Livelar purchased a house and lot in the City of Canton. (3) On December 20, 1951, Livelar, without his wife joining, executed and delivered a deed to Lester M. and Mary H. Kepner for the 160 acres in question.

The issue in this case was whether or not Livelar, when he purchased the house and lot in Canton, did so in good faith for the purpose of changing the homestead from the farm to the property in town.

██ ▌ Of course, the burden was on Mrs. Livelar as complainant to make out her case. Her husband had died before the trial; and, on objection, she was not permitted, under Sec. 1690, Code of 1942, Rec., to testify as a witness.

Mrs. Nona Belle Chastain and Mrs. C. R. Russell were called by Mrs. Livelar as witnesses. They lived in Jackson and had visited her in the home on the farm only four or five times. They testified that, about three weeks before Mrs. Livelar went to the hospital, they were in company with her when she was talking to her husband at Johnson's store. Mrs. Chastain said that Livelar told his wife that he had sold the farm and she did not have a place to stay and for her to get her things and get out. Mrs. Russell said that, at the time, he told Mrs. Livelar that she did not have a home anymore

at that place as he had sold it. Both agreed that he made an indirect threat against them, if they gave her a place to stay. Neither of these witnesses saw Mrs. Livelar anymore until she was in the hospital, where she went because of a beating administered to her by her husband on December 6, 1951. Obviously they had no personal knowledge as to where Mrs. Livelar had been residing for the three week period since they last saw her. However, when they went to the farm at that time to get Mrs. Livelar's car, Mrs. Chastain said that she saw some of Mrs. Livelar's clothes scattered over the back porch. Several other witnesses testified for the complainant, but their evidence was of little, if any, value.

In her sworn bill for separate maintenance, Mrs. Livelar had charged, among other things, that she was unwilling to sign the deed for the sale of the farm unless the defendant would make some provision for her in money out of the proceeds. On the other hand, in his sworn answer thereto, Livelar had stated that he offered his wife $1,000 to release her interest in the land, and that his reason for purchasing the home in Canton was because of orders from his doctor, as his wife well knew.

Dr. A. P. Durfey, offered as a witness by the complainant to show the extent of her injuries as a result of the beating on December 6, 1951, admitted, on cross-examination, that Livelar was under treatment for his heart condition at that time, and that he had had a serious heart condition for years.

Lester M. Kepner testified that on November 30, 1951, he went to see Livelar at his home in Canton, where he was living at the time. He spent about an hour in an effort to purchase Livelar's farm property. He saw the furniture and household goods that had been out on the farm. The house was fully furnished. There was evidence that he had both eaten his meals and was keeping his clothes in this house. The building was in much

better condition than the one on the farm. (Counsel for complainant admitted that the farm house was in bad condition.) On December 19, he again inspected the farm property and it was empty at that time. Later, on the same day, he conferred with Livelar at his Canton home and consummated the deal for the purchase of the property. In the meantime he sought advice from Honorable H. T. Huber, an attorney, and this lawyer told him that the member, providing for the support of the family, had the right to designate where the couple should live. For this service and advice, he paid a fee of $35. He and his wife moved upon the farm on January 1, 1952. They made extensive necessary improvements. Mrs. Livelar visited at their home during the month of January and saw the improvements that had been, and were then being, made. She complimented the way in which this work was being done, and commented that she felt sure that her husband could have done the same thing. In all, she visited them between twelve and twenty times and never once made any objection or asserted any claim to the property. On the contrary, she was friendly at all times and sent them post cards when she was out of the community. He had never asked her to sign a deed, oil lease or any other instrument affecting this property. Besides, he had testified in her behalf when her separate maintenance matter was tried. He had never heard of any dissatisfaction from her until he received the summons to court. Mrs. Mary H. Kepner corroborated the testimony of her husband in many particulars.

Mrs. Willie Hardy inspected the Canton home while Livelar was living there. She said there was quite a large quantity of furniture in the house at the time. Although the neighborhood was somewhat mixed, no Negroes lived nearby.

The learned chancellor, after hearing all of the evidence, filed a written opinion in the case. He reviewed

the evidence as to the condition of Livelar's health; his purchase of the home in Canton on November 7, 1951, and his subsequent move into the same in November 1951; Kepner's testimony as to what he found in the Canton home when he sought to purchase the farm; and Kepner's later discovery that the farm property was completely unoccupied. It was pointed out that, when Livelar bought the house and moved to Canton, he had the right to do so if he was acting in good faith. To the chancellor, it appeared that the home in Canton was more suitable and comfortable and in better living condition than the one on the farm. Consequently the chancellor was of the opinion that, since Livelar had purchased a new home in good faith, it was Mrs. Livelar's duty to go there with him; that the country property was abandoned as the homestead; and that Livelar had the right to sell and convey a good title thereto without the joinder of his wife. The chancellor further found as a fact that the removal to the new home and Mrs. Livelar's refusal to accompany him occurred before the regrettable incident of December 6, 1951, when she was beaten by her husband. The opinion also noted that Mrs. Livelar was fully cognizant of the repairs and improvements that the Kepners were making, entailing the expenditure of large sums of money, and that she, at no time, asserted any homestead claim which she may have had against the property.

In accordance with the finding, a decree, dismissing the original bill with prejudice, was entered. From that decree, Mrs. Livelar appealed.

Of course, under Sec. 330, Code of 1942, Rec., the wife, with certain exceptions, must join in the conveyance of the homestead. This is a salutary provision in the law and has been upheld in numerous cases.

But this Court in the early case of Wilson v. Gray, 59 Miss. 525, held that the conveyance by Gray, under the circumstances there proposed by Wilson to be shown

by the evidence, was not invalid. The opinion said: "If he (Gray) had resolved to change his residence, and made a sale of his homestead, in order to effect it, and not as a device to evade the legal requirement of his wife's joinder, the fact that it was made before his actual removal from the land did not make invalid the conveyance, which would have been valid if made after the abandonment occurred."

The case of Tanner v. Tanner, 111 Miss. 460, 71 So. 749, was an effort to set aside a deed by J. T. Tanner to forty acres of land, in which his wife did not join, because, it was said, that the land was a part of the homestead. The facts are set out in great detail in the opinion. Suffice it to say, it appeared that none of this acreage had been cleared or cultivated and its only homestead use had been as an occasional source for wood fuel. There was other evidence to show the intention of the owner to include other land, on which he actually lived but which he did not own, as a part of his homestead. The opinion said that J. T. Tanner "was the head of the household, and had a right to choose the homestead. By selling the forty acres he evidently intended to choose the land upon which he lived, and the land cultivated by him and adjoining that upon which he lived, as his homestead. Ownership in fee simple of the homestead is not essential."

Again, in Ritter v. Whitesides, 179 Miss. 706, 176 So. 728, this Court reiterated the rule that "Under the law, the husband has the right to select the homestead, and to move from one and select another, * * *." See also Cliett, et al. v. First National Bank of West Point, 182 Miss. 560, 181 So. 713.

The foregoing principle in no way weakens the right of the wife to her protection of shelter in the homestead. Neither does it conflict with the principle that a husband, who has driven his wife from his home and refuses to permit her to return, cannot lawfully convey the home-

stead property to a third person without the consent of his wife. Several of these cases are collated and discussed in Robbins v. Berry, 213 Miss. 744, 57 So. 2d 576.

■■ The preponderance of the evidence fully warranted the court in finding that the selection of a new home in Canton was made in good faith and that Livelar, as the head of the family, had the right to make the selection. Consequently it follows that Livelar had the right to sell and convey with good title the country property even though his wife refused to join in the deed.

Of course the Kepners knew that Mrs. Livelar did not sign their deed. But, she went along for nearly eight years without complaining or asserting any claim whatever to the property. During that time she had seen them make extensive improvements and expend large sums of money for this purpose. This fact, coupled with the sworn statement in her bill for separate maintenance to the effect that she was unwilling to sign the deed for the sale of the farm unless her husband would make some provision for her from the proceeds, evidently had an adverse effect on the court concerning her good faith in a claim of homestead rights.

From which it follows that the decree of the trial court must be affirmed.

Affirmed.

*Kyle, Ethridge, Rodgers and Jones, JJ.,* concur.