GRANTHAM, et al. *v.* RALLE

No. 42836          December 20, 1963          158 So. 2d 719

*Ben H. Stone, Brunini, Everett, Grantham & Quin,* Jackson, for appellant.

*W. E. Gore, Jr.,* Jackson, for appellee.

BRADY, TOM P., J.

This is an appeal from the Chancery Court of the First Judicial District of Hinds County, in which Mrs. Bobbie Ralle, appellee here and complainant below, filed a petition for a temporary injunction prohibiting the sale of a piece of property situated in the City of Jackson, hereinafter particularly described, under a deed of trust given by her husband, Ralph Ralle, for the

use and benefit of Justin McCarty, Inc., a Texas Corporation. A temporary injunction was ordered and issued. Subsequent thereto a petition was filed to make the injunction permanent and for the cancellation of the aforesaid deed of trust as a cloud on the title of the undivided one-half interest in and to the hereinafter described real property which the appellee alleged was hers as the wife and joint owner of this property as her homestead.

On the hearing for making the injunction permanent, the chancellor found that the injunction should be made permanent and so ordered, and also ordered and decreed that the aforesaid deed of trust was null and void and was therefore cancelled. It is from this order and the granting of the permanent injunction and the cancelling of the deed of trust that this appeal is taken.

The record discloses the following pertinent facts: The appellee, Mrs. Bobbie Ralle, is the wife of Ralph Ralle and during the year 1957 they owned and occupied as a residence Lot 104 of East Meadowbrook subdivision, a subdivision in the First Judicial District of Hinds County; that the homestead was located on a street known as London Avenue in said city; that the husband worked the entire year of 1957 in New York, but kept his residence in Jackson at the aforesaid location; that on October 1, 1957, the said Ralph Ralle began employment with Justin McCarty, Inc., in Dallas, Texas; that his employer insisted that he move and take up his residence in said city; that negotiations were entered into between his employer and the said Ralph Ralle to accomplish this end.

The record further discloses that he found and selected a home, and that prior thereto he had lived in a hotel or an apartment before he had selected and began the occupancy of his new homestead in Dallas, Texas. These facts were well known to appellee because sometime between October 1, 1957 and November 25, 1957,

she went to Dallas to examine the house which had been selected as a new homestead. She was in Dallas approximately a week and she approved the selection of the home as the new homestead. The record is clear that in order to purchase the new homestead, it was necessary to borrow certain specific sums of money; that on December 3, 1957, in order to purchase the new homestead, Ralph Ralle executed a promissory note in the sum of $8,500 payable to Justin McCarty, Inc.

Ralph Ralle testified that on that date he alone signed a deed of trust on the London Avenue property in the City of Jackson, which was given to the said Justin McCarty, Inc., to secure the aforesaid loan of $8,500. It is important to note that this alleged deed of trust was never produced at the trial, that Ralph Ralle did not have a copy thereof, and it was never recorded; it was supposed to have been executed upon a Texas form of deed of trust.

The record further discloses that during the week of November 25, 1957, Mr. and Mrs. Ralle jointly purchased the home in Dallas, Texas, more particularly described as Lot 4, Michael Street, Block 7/7374 of Jan-Mar Circle, Sec. 3. A warranty deed dated November 25, 1957 was executed to Mr. Ralph Ralle and wife Bobbie Faye Ralle. This deed was acknowledged on December 5, 1957 by W. C. Bonds, receiver to Ralph Ralle, et ux. The consideration in said deed was the sum of $37,500, which amount was advanced by the Metropolitan Savings & Loan Association at the special instance and request of the grantees, and also a $7,500 advancement.

The said Ralph Ralle and wife, Bobbie Ralle, appellee, executed a deed of trust on this same property situated in the City of Dallas to the Metropolitan Savings & Loan Association as security for the aforesaid loan of $37,500. Ralph Ralle and appellee also executed another deed of trust to secure a principal sum of $7,500

evidenced by a promissory note executed by the said Ralph Ralle and his wife and payable to W. C. Bonds, receiver. This second deed of trust was given as security for the advance of $7,500 which was a part of the purchase price of said new homestead in Dallas, Texas. The record shows there was still lacking $1,500 of the purchase price, and this was paid by appellee and her husband from their savings, so that the total cost of the new homestead was $55,000. The $10,000 cash payment was procured from the loan of $8,500 aforesaid which was borrowed by the appellee's husband from Justin McCarty, Inc., plus the $1,500 which appellee's husband took from his savings.

The record discloses further that appellee's husband was with her over the weekends and at Christmas in their homestead in Jackson, Mississippi; that at most only two or three weekends was he required to be away; that on January 15, 1958, their household furniture and personal possessions were moved from Jackson to Dallas and placed in the new homestead which had been purchased there; that on January 16, 1958, they actually took up residence in their new homestead in Dallas.

The record shows that on February 12, 1958 the deed of trust which Ralph Ralle executed, and which has been declared null and void by the court below, was actually executed on February 12, 1958, and this is conceded by both sides. The deed of trust covering the London Avenue property in the City of Jackson, though it bore the date of execution as December 3, 1957, was actually not signed or executed until February 12, 1958, or subsequent thereto. The attorney representing Mr. Ralle testified that he deliberately dated the deed of trust as of December 3, 1957 so that the date would correspond with the date of the note given which was secured by said deed of trust. The note bore the date of December 3, 1957. By examining the photostatic copy of the deed of trust, it is obvious that the insertion

"12th" was first written in then marked out and the insertion "3rd" was substituted therefor before the month of December and the date 1957 was written therein. The acknowledgement shows that it was on February 12, 1958, but the record shows that the appellee's husband actually borrowed the $8,500 from appellant on December 3, 1957, the same date on which the alleged first deed of trust was drawn and which was claimed to have been signed on December 5 by appellee's husband.

The property on London Avenue in the City of Jackson was put up for sale on January 15, 1958, by appellee and her husband, and remained on the market for sale for approximately a year but there were no takers. Appellee and her husband returned to Jackson and into the original home which they had owned during the month of February 1960. After the resignation of Justin McCarty, the original trustee, R. Gordon Grantham was appointed substituted trustee in the deed of trust, and upon default by the grantor, Ralph Ralle, under the terms of said deed of trust, notice was given of a substituted trustee's foreclosure sale. It was the notice of said substituted trustee's sale which precipitated the petition filed by appellee for a temporary injunction. The substituted trustee's notice of sale was issued on October 1, 1962, calling for the sale on October 25, 1962. No complaint is made about the validity of the notice of trustee's sale.

The record shows that appellee's husband worked for Justin McCarty, Inc. for approximately six months after October 1, 1957, and because of some misunderstanding or difficulty he severed his connection with appellant. The petition for the temporary injunction, which was not contested, together with the petition to make said injunction permanent, and for cancellation of the deed of trust given by appellee's husband as a cloud upon the title of appellee, and the answer of appellants, clearly place in issue the legal questions of law and issues of

fact presented in this cause. An amended petition to make the injunction permanent and for cancellation of the deed of trust as a cloud on title was filed by the appellee herein, but was withdrawn together with a special demurrer thereto.

The fundamental issues which require consideration by this court under the aforesaid statement of facts are simply these: (1) Do the provisions of Sec. 330, Miss. Code of 1942, Recompiled, invalidate the deed of trust given only by appellee's husband which was dated before but was actually prepared, signed, acknowledged and delivered after the husband and wife had admittedly abandoned the homestead upon which the deed of trust was given; and (2) do the provisions of said Sec. 330 invalidate a deed of trust executed by appellee's husband alone on a house in which the husband and wife were residing when said deed of trust was given when the following facts actually existed. (a) Said deed of trust was given to obtain money with which to purchase a new homestead in another state; (b) the money obtained by means of said deed of trust was actually used to purchase a new homestead which had been seen and approved by the non-signing wife prior to the purchase and before the deed of trust on the old homestead was executed and delivered; (c) both husband and wife actually moved their personal belongings and furniture into the new homestead, established it as a new residence and place of abode and (d) lived in it for some two years; (e) the husband and wife placed the old homestead on the market in an effort to actually sell and dispose of said old homestead.

The first question to be considered herein is when was the deed of trust to the Jackson, Mississippi property which was signed only by appellee's husband actually given or executed? It follows that this additional question must be answered. Does the fact that the deed of trust in the opening sentence recites, "This

indenture, this day made and entered into . . ." and the concluding sentence which is, "In testimony whereof, witness the signature of the grantor this 3rd day of December 1957," determine per se and establish as an actual fact that the deed of trust was executed on December 3, 1957? The record is undisputed that the aforesaid deed of trust was actually prepared on February 12, 1958, actually signed on that date, and acknowledged and delivered on that date. It is these enumerated acts which constitute the execution of the deed of trust. The recitation in the deed of trust as to the date of making and signing when inaccurate is not controlling and must give way to the actual facts or truth of the matter.

Without considering the desirability of having the execution date of the deed of trust coincide with the date of the promissory note which the deed of trust secures, and irrespective of the actual date of execution of the deed of trust, it is obvious that no deed of trust can be operative until it has actually been prepared, signed, acknowledged and delivered, and an inaccurate or untrue recitation in the note itself will not validate a note which has not yet come into existence.

On December 3, 1957, the note in question and at bar had not yet been prepared and it was not until February 12, 1958, that the note was drawn up, executed and acknowledged. The controlling date, therefore, is February 12, 1958, and not December 3, 1957. The inaccurate back dating of the deed of trust, which is undisputed in the record, so that the date (December 3, 1957) shown therein as the execution date would coincide and the same date upon which the note was executed, which is not an uncommon practice, will not alter the stern fact that February 12 is the actual date upon which the deed of trust was prepared, signed, acknowledged and delivered, and, therefore, executed. Cummings v. Busby, 62 Miss. 195; Smith v. Williams, 38 Miss. 48; Holmes Bros. v. McCall, 114 Miss. 57, 74 So. 786; Per-

kins v. Swank, 43 Miss. 349; Elmslie v. Thurman, 87 Miss. 537, 40 So. 67; Allen v. Boykin, 199 Miss. 417, 24 So. 2d 748; U. S. v. LeBaron, 19 How. 73, 15 L. Ed. 525; Mayburry v. Brien, 10 L. Ed. 646; Jelks v. Barrett, 52 Miss. 315; Dist. of Columbia v. Camden Iron Works, 181 U. S. 453, 45 L. Ed. 948; Johnson v. Brook, 31 Miss. 17; 59 C.J.S., Mortgages, Sec. 128, p. 173.

Any purported former deed of trust which has not been produced so that it can be examined, has no evidentiary value and cannot be considered here in determining the true execution date of the deed of trust at bar.

The next pertinent question to be determined is: Does Sec. 330, Miss. Code of 1942, invalidate the deed of trust executed on February 12, 1958 by appellee's husband alone on the homestead situated in Jackson, Mississippi? That part of Sec. 330 which is involved is as follows: "A conveyance, mortgage, deed of trust or other incumbrance upon the homestead exempted from execution shall not be valid or binding unless signed by the wife of the owner if he be married and living with his wife. . . . ." It is obvious that the answer to this basic general question depends upon whether the appellee and her husband had abandoned the homestead in Jackson upon which the deed of trust had been given by the appellee's husband only.

These facts are undisputed that between October 1, 1957, the date appellee's husband began his new employment with appellant in Dallas, Texas, and November 25, 1958, appellee and her husband received a warranty deed to their new homestead in Dallas, and on January 15, 1958, the appellee moved from Jackson to Dallas. On that date the household furniture and personal belongings of appellee and her husband were also removed from said home in Jackson to the new homestead in Dallas. November 25, 1957, is the date that both appellee and her husband acquired the new homestead. The removing of the furniture and personal

possessions from the old homestead on January 15, 1958, to the new homestead was secondary to their having first secured the new homestead on November 25, 1957. If they had not moved the furniture and possessions to the new home in Dallas, and if they had continued to live in the house in Jackson, of course, it could be said that they had not abandoned the Jackson, Mississippi, homestead, but they did abandon the Jackson home and did begin occupancy of the new Dallas home on January 16, 1958. It follows, therefore, that when the deed of trust was executed by appellee's husband on February 12, 1958, he alone had any interest in said old home since the appellee had abandoned it and relinquished any homestead rights or interests she formerly had therein.

In claiming that the deed of trust in question was executed upon December 3, 1957, appellee relies largely upon the testimony of her husband, Ralph Ralle, which was to the effect that on December 3, 1957, simultaneously with execution of the note in the amount of $8,500 payable to appellant, he executed a first deed of trust on the London Avenue property situated in Jackson, Mississippi. This testimony is uncorroborated, and, moreover, the testimony of Attorney Ragsdale is conflicting with reference to whether or not a copy of his purported deed of trust of December 3 was used in preparing the second deed of trust which appellee's husband admitted he signed on February 12, 1958. It is indeed a novel proposition to assume that the chancery court could take into consideration and now apply the terms and conditions of a non-existent deed of trust. If the deed of trust had been recorded, or if the appellee had a copy of the alleged original deed of trust, the court below would have had some authority upon which to base its conclusions that the original deed of trust was executed on December 3, 1957, but that purported deed of trust is not in evidence in this cause, nor is the

notice of the substituted trustee's sale based upon the first alleged December 3, 1957 deed of trust, nor, in fact, could a trustee's sale be advertised and published and carried out on such a non-existent deed of trust.

We take the position that before legal remedies can be asserted in any court of equity upon alleged homestead rights there must be some writing or some tangible evidence of the rights which are being asserted other than the oral testimony of an obviously interested witness.

It is to be noted that these homestead provisions first were listed in the Code of 1880 primarily as a protection for the wife in lieu of dowry which had been abolished by statute. The basic purpose was, of course, to prevent her husband from conveying or encumbering the homestead without the consent of his wife, and the effect was to avoid any attempt to so convey the homestead.

We feel, moreover, that even if there was in fact a deed of trust given by the appellee's husband on December 3, 1957, to which we do not agree, that at the time this deed of trust was given it was not prohibited by the intent and meaning of the provisions of Sec. 330, Code of 1942, for several good reasons, the first being that appellee and her husband had already purchased another homestead in the City of Dallas. Exhibit B-1 to the testimony of appellee shows that on November 25, 1957, a warranty deed was given by one W. C. Bonds, a receiver, to Ralph Ralle and wife, Bobbie Faye Ralle, appellee herein. This warranty deed recites in the face thereof, "For and in consideration of thirty-seven thousand five hundred dollars, cash heretofore advanced, and for consideration also of seven thousand five hundred dollars likewise advanced," that the identical property, Lot 4 of Block 7/7347 of Jan-Mar Circle, Section 3, in the City of Dallas, Texas, was so conveyed to Ralph Ralle and wife, Bobbie Faye Ralle. This is in

contradiction of the answers by appellee to interrogatories in which she said they purchased the home sometime in December. The deed shows that the home was conveyed to them on November 25, 1957. The record further discloses that this is not a case in which the husband is trying to drive his wife away from his home or to obviously deprive her of homestead rights in spite of the prohibitions of Sec. 330 of the Code of 1942, but that he is, with her consent, securing a new home for her.

There is no mistreatment of the wife shown in this record such as was present in the case of Scott v. Scott, 73 Miss. 575, 19 So. 589. There the husband drove his wife without cause or provocation from the home and would not permit her to return, and while she was away he attempted to sell or convey the same without having his wife join in the conveyance. It was clearly shown in Scott v. Scott, supra, that as long as the wife had the right and the will to remain at home she is to be considered as there living within the meaning of the statute, even though she was not actually in the home because of the mistreatment which the husband had heaped upon her, thereby forcing her to leave her home. In the same case the Court recognized a long established rule, which is that the husband, as the head of the family, has the recognized right to fix the domicile and when he does so in good faith and they move from the homestead, which thereupon loses its character as such; and if the legal title is in him, thereafter may be conveyed by his own deed without the consent of his wife. The point is that it must be good faith on the part of the husband to change and adopt a new homestead and not deprive the wife of any of her rights which she had when she resided in the homestead with him as his wife.

In the case at bar it is undisputed that when appellee's husband decided it was to his advantage to leave his home in Jackson and go to Dallas and there begin

his new employment with appellant, Justin McCarty, Inc., as the head of his household he had a right to do this. The record shows that appellee approved of this change; that even though his employer and Ralph Ralle had chosen the home they felt was suitable, they wanted appellee to inspect, and to approve and decide whether or not the new homestead would be acceptable to her; that she went to Dallas and she approved of his homestead; and arrangements were made whereby appellee and her husband could and did buy the new homestead in Dallas, Texas, as shown by the deed hereinabove mentioned.

The acts of the husband in this instance are certainly in good faith, and insofar as the realization of the change of homestead is concerned, it was realized on November 25, 1957, when the appellee and her husband were made grantees in said deed from the aforesaid W. C. Bonds. At this time there had been no check or note given, and no deed of trust executed, yet the appellee and her husband then had a new homestead which they had chosen in the City of Dallas. It is urged that since appellee had not actually left the City of Jackson and had not moved her belongings out of said homestead that she was still residing and had not abandoned her home in Jackson. We do not feel there is any merit in this contention. We hold that for all intents and purposes insofar as the operation of Sec. 330, Miss. Code of 1942, is concerned, the appellee had abandoned her home though she had not actually removed all of her possessions therefrom. This is the converse of the rule announced in Scott v. Scott, supra.

The case of Wilson v. Gray, 59 Miss. 525, is strikingly applicable in the case at bar. It is to be conceded that it was not a unanimous opinion in Wilson v. Gray but Chief Justice Campbell rendered the opinion and it still controls today as it did in April 1882 when the case was decided. It is to be noted that there the wife

signed the conveyance with her husband but the acknowledgment which was written to the deed failed to state that she sealed and delivered the instrument. The deed was given by the husband before the wife had actually left the homestead. It is this identical situation which is urged in the case at bar by appellee, towit, that she still had not left the property in Jackson, Mississippi.

The record in Wilson v. Gray shows that the husband and wife decided to move to Texas, and that the husband gave the deed and it was executed before the wife had actually moved. It was their determination to move that brought about the execution of the deed in which the wife failed to say she sealed or delivered, but did say she had executed it. They made the sale of this property by this deed for the express purpose of moving to Texas and of acquiring a new homestead. The court held that the conveyance by Gray, under the circumstances as shown there, was not invalid although the acknowledgment by his wife of it was defective. The Court said further:

"If he had resolved to change his residence, and made a sale of his homestead, in order to effect it, and not as a device to evade the legal requirement of his wife's joinder, the fact that it was made before his actual removal from the land did not make invalid the conveyance, which would have been valid if made after the abandonment occurred. The sale of the homestead having been made, in execution of the purpose to abandon it to acquire another residence, and this purpose having been consummated, it is not material that the conveyance, which was one of the steps in the process of the change of residence actually made, preceded by a short time instead of succeeding the final act of abandoning the homestead."

In passing, the Court further held that the evidence offered to show Gray's purpose to remove from his

residence and his removal and all the circumstances attending the conveyance should have been admitted. In the case at bar we have a striking parallel. Here the appellee went to Texas for the express purpose of choosing and approving a new homestead in lieu of the homestead which she had in Jackson, Mississippi. It is urged by appellee that when her husband signed a deed of trust, the foreclosure of which precipitated this lawsuit, she was still living in Jackson, and, therefore, it was invalid and of no force and effect. The appellee is asserting exactly what was urged by the appellee in the *Gray* case, and the recent decisions of this Court bear out the wisdom of the decision rendered by the Court in Wilson v. Gray, supra. We are of the opinion that the dissenting opinion of Judge Cooper in Wilson v. Gray applies a very strict and rigid interpretation of the meaning of the prohibition relating to the necessity of having a wife sign a deed or encumbrance of the homestead before it can be valid. But in the case at bar, where the wife participates in, is cognizant of, all the negotiations and dealings and agrees that the homestead shall be changed and goes so far as to receive a warranty deed conveying unto her husband and to her the new property, she has to all intents and purposes abandoned her former homestead. All that remains is to do exactly what she did do as reflected in the record at bar. She returned to Jackson to remove and did remove her furniture and personal possessions and left her former homestead in Jackson, advertised the same for sale, and then resided for a period of two years in her new homestead, abandoning it only in February 1960, when she changed her mind and then decided she would go back and take up her old homestead anew.

Appellant and appellee cite the case of Hughes v. Hahn, 209 Miss. 293, 46 So. 2d 587, decided in 1950. In this case, which can afford but little comfort to appellee, this Court points out that there are certain

differences which distinguish it from *Wilson v. Gray.*
In the Hahn case, the grantor, John Bissell, executed
a deed of trust in favor of one of his daughters, and at
the time he and his wife had already determined to
move away from the land and go to Montgomery County,
where, in two weeks thereafter, they did go to live with
some of his wife's relatives, due to the fact that he,
the husband, was then an invalid and they did not care
to remain alone on the homestead in Yalobusha County
after the youngest son had been called into military
service shortly before the execution of the said deed
by the husband. It appears also that the husband had
been married heretofore and had six children other than
the daughter to whom this deed was made. It appears
that the wife was willing to join in the execution of
the deed to her stepdaughter, and that her failure to
do so was that she was sick and unable to go to the
Town of Coffeeville where the deed was executed and
acknowledged by her husband. In distinguishing the
cases, the Court pointed out that in *Wilson v. Gray*
there was a valuable consideration paid for the home-
stead; that there the husband and wife did actually
acquire another homestead in Texas, carrying out their
original purpose; that they used the consideration re-
ceived by the husband from Wilson to pay the purchase
price thereof, the same being $2,500.

Though it was pointed out in Hughes v. Hahn, and
at that time it was correct, that no similar decision
had been rendered, but subsequent to March 1950, the
date the Hughes v. Hahn case was decided, a similar
decision has been rendered by this Court, namely, Live-
lar v. Kepner, 146 So. 2d 346, decided on November
5, 1962. While it is true that in the case of Cummings
v. Busby, et ux, 62 Miss. 195, it was pointed out that
the invalidity of a deed of trust on a homestead resulting
from a nonjoinder therein of the wife of the owner
cannot be cured by the family's subsequent removal,

temporary or permanent, from such homestead, that is to say, the conditions existing at the time of the execution of the instrument determine its validity or invalidity and cannot be affected by subsequent events. Still it is further pointed out in the case of Howell v. Hill, 94 Miss. 566, 48 So. 177, that a deed to the husband's homestead is not invalid where the husband and wife each executed it with the knowledge and consent of the other, although they did not execute it at the same time.

In Howell v. Hill, supra, the husband signed and acknowledged the deed in September and the wife signed and acknowledged the same during the following May, but when she signed she did so with full knowledge and consent of her husband. It was pointed out in *Hughes v. Hahn* that there the husband had been dead for several months when the wife joined in the conveyance and he could not, therefore, have consented to a subsequent execution of the same; that when he died on April 1, 1948, he was obviously the owner of the land in question because of the invalidity of his former deed of conveyance thereof without the signature of his wife, and the rights of the complainants in the case had intervened long prior to her signing and acknowledging the deed.

In *Hughes v. Hahn,* supra, the Court pointed out also that in the *Wilson v. Gray* case the husband intended to and did acquire another homestead for himself and his wife under his right to select a homestead and place of abode, whereas in *Hughes v. Hahn* there is no proof that when he executed the deed to the homestead in favor of his daughter, that at the time he did so, he intended to or ever did acquire another homestead for her in its place, but that he sold the homestead to go and live with her among her relatives during the remaining years of his life as an invalid. However, the court points out that it did not base its decision in the case on that particular ground but based it on

the fact that she did not attempt to execute the deed until after the rights of complainants had intervened at the death of her husband. It seems, therefore, that in the Hahn case the Court refused to let the wife disclaim the benefits of the provisions of Sec. 330, Miss. Code of 1942, and held that she could not sign and acknowledge a deed after his death of which he had no knowledge and that her act in doing so had no curative effect, as it was without his contemporaneous consent. And this was true even though at the time of her execution of the deed given by her husband during his lifetime the wife may have been willing to join in the deed is not a material factor. The Court held there was no evidence of any intent to acquire a new homestead for the wife, or that any such new homestead was in fact ever acquired, and for that reason refused to hold that the deed signed by the husband alone was valid, though signed later by the wife subsequent to his death.

In the case at bar, it is to be noted that appellee's husband, Ralph Ralle, testified that the appellant, Justin McCarty, Inc., loaned him $8,500 two days before the new house was purchased for the express purpose of purchasing the house; that the deed of trust backdated to December 3, 1957, to Justin McCarty, Inc., on the Jackson property was to secure the payment of this $8,500; that the new homestead was actually purchased.

"Q. I beg your pardon, forty-five thousand, and you said the purchase price was what?

"A. Fifty-five.

"Q. All right, you needed ten thousand difference, is that correct?

"A. That's right.

"Q. How was the ten thousand paid?

"A. Mr. McCarty gave me eighty-five hundred and fifteen hundred came out of my savings. He gave me the money two days before we closed the deal.

"Q. Two days before you closed the house?

"A. Yes, sir, for the purpose of purchasing the house. He helped select the house.

"Q. Now, Mr. Ralle, these instruments all reflect that they were executed on 25 November, 1957.

"A. No, sir, they were executed on the 5th of December, 1957. I believe the papers were prepared earlier, but the actual closing was the 5th of December, as shown by a check for $10,00.00 that I paid.

"Q. Referring you to the acknowledgment, the acknowledgment is dated what?

"A. The 5th of December.

"Q. So that was the actual closing date, is that correct?

"A. Yes, sir.

"Q. Now, on that date is the date that Mr. McCarty advanced you this money, is that correct?

"A. Mr. McCarty advanced it on the 3rd of December.

"Q. So, that on your closing on the 5th you actually had all of the cash money that you needed to consummate the transaction?

"A. Yes, sir."

The record is undisputed that the new homestead was purchased with the knowledge, consent and approval of the wife, and that the husband and appellee signed the deed of trust to protect the money which had been advanced by the Texas parties who were interested in negotiating the sale covering the identical property conveyed to them by said warranty deed. Appellee's husband admitted he owed $8,500 to appellant and that this sum of money was used in the purchase of the new homestead in Dallas, Texas.

It is undisputed that the husband, Ralph Ralle, had the right, acting in good faith as he did, to select a new homestead in Dallas in lieu of his old homestead in Jackson. Assuming that appellee had not left her home in Jackson, and assuming that she did not, which she

did not do, join in the deed of trust alleged or purported to have been executed on December 3, 1957, as claimed by appellee, do these facts amount to a violation of the conditions of Sec. 330, Miss. Code of 1942, so as to invalidate the deed of trust and to prevent the foreclosure thereof by appellant?

The case of Livelar v. Kepner, 146 So. 2d 346, 244 Miss. 723, sheds considerable light on this question. Mrs. Livelar brought suit against her husband and Kepner and his wife, Mary, seeking to cancel a deed for 160 acres of land executed by her husband to the Kepners on December 20, 1951. She charged that this property was and had been her homestead and that she had not signed the deed and had never released her rights therein. The records shows that she had filed suit for separate maintenance against her husband in 1952, sometime subsequent to the date her husband executed the aforementioned deed, and had obtained a decree awarding her support in the sum of $175.00 per month. The Kepners denied that the Livelars had maintained their homestead on the 160 acres until December 6, 1951, but that on November 7, 1951, they had acquired a house and lot in Canton and moved into it as their homestead on November 14, 1951; that Mr. Livelar had called upon Mrs. Livelar to reside with him in the new homestead but she wilfully refused to do so. The Kepners had made substantial improvements on the place and Mrs. Livelar had visited them on several occasions and observed the improvements which had been made. They further claimed that on December 20, 1951, the date the deed was executed, they had purchased the land in good faith, and that Mrs. Livelar subsequently by her separate maintenance suit had received a decree in settlement of her rights, and that the assertion of homestead rights was repugnant to the relief granted her in the separate maintenance suit.

The defendant Livelar admitted that he and his wife lived on the 160 acres as a homestead, but denied that they were living on it on December 6, 1951. He alleged that both he and his wife moved from the property on November 14, 1951, and both of them abandoned it; that on December 20, 1951, when he sold the property, it was vacant, wholly abandoned, and was no part of his homestead. The record shows that in September 1940 Livelar purchased the 160 acres of land in controversy and he and his wife moved upon it; that on November 7, 1951, Livelar purchased a house and lot in the City of Canton; that on December 20, 1951, without his wife joining him, Livelar executed and delivered a deed to Lester M. and Mary H. Kepner for the 160 acres in question. The question in the case was whether or not Livelar, when he purchased the house and lot in Canton, did so in good faith for the purpose of changing the homestead from the farm to the property in town. There were a great many facts alleged in the case which did not have a direct bearing in point but which were important because they related to whether or not Livelar had acted in good faith. It was pointed out by the Court that when Livelar bought the house and moved to Canton he had a right to do so; that he was acting in good faith and the house in Canton was more suitable and comfortable and better living conditions; that it was a new home, and in good faith it was Mrs. Livelar's duty to go there with him; that the country property was abandoned as a homestead and Livelar had the right to sell and convey a good title thereto without the joinder of his wife. The Court further found that the fact that he removed to the new house and Mrs. Livelar's refusal to accompany him occurred before the regrettable incident of December 6, 1951, when she was beaten by her husband. The Court cited the case of Wilson v. Gray, supra, and pointed out that it was held in that case that conveyance by Gray under the

circumstances there proposed by Wilson to be shown by the evidence was not invalid; that if Gray had resolved to change his residence and make a sale of his homestead, in order to effect it and not as a device to avoid the legal requirements of his wife joining in, the fact that it was made before his actual removal from the land would not make invalid the conveyance, which would have been valid if made after the abandonment occurred. Tanner v. Tanner, 111 Miss. 460, 71 So. 749; Ritter v. Whitesides, 179 Miss. 706, 176 So. 728.

The Court pointed out in the *Livelar* case that the application of the foregoing principle in no way weakened the right of the wife to her protection of shelter and a homestead, neither did it conflict with the principle that a husband who has driven his wife from his home and refused to permit her to return cannot lawfully convey homestead property to a third person without the consent of his wife.

Just as in the *Livelar* case, the preponderance of the evidence fully warranted the Court in finding that the selection of a new home in Canton was made in good faith and that Livelar, as head of the family, had the right to make the selection, so in the case at bar, the husband, Ralph Ralle, had the right to select a new homestead in Dallas, Texas. He did so with the full consent and approval of his wife. None of her rights or protection and shelter in the homestead as a wife have been impaired or injured in any way, nor has the husband driven his wife from his home or denied her the right to come to the new homestead. Furthermore, appellee, in spite of the fact she says she did not know her husband had given a deed of trust on the homestead in Jackson, was willing to have it offered for sale, and as far as she is concerned had the sale been consummated she would have had no right, title, claim or interest in said home whatever. For two years appellee remained in Dallas in her new homestead without mak-

ing any complaints, and since the greener pastures which she thought would be in Texas appear to be not so green, she now seeks to return and reclaim her homestead privileges in Mississippi which she had abandoned.

In Ritter v. Whitesides, supra, it was held that the husband had a right to select a homestead and move therefrom and select another. This right, of course, has some limitations in favor of the wife, and she has a right in a homestead which equity will protect at her instance in some cases, but when the husband moves from the homestead with the consent of the wife, selects another place to live, and then encumbers the former homestead while neither he nor his wife are living there, securing a loan on the representation that the homestead did not exist, then the right to the homestead is waived in favor of the mortgage or deed of trust so given. While the deed of trust here at bar does not recite that the Jackson, Mississippi, property was not a homestead, nevertheless, the wife cannot now avail herself of the statutory protection by saying that she did not intend to change her homestead, when she went there, selected it, and remained and lived there for two years. Her homestead in Mississippi had been abandoned, and the voluntary removal therefrom by her and her husband consummates, concludes, and firmly establishes this fact.

In conclusion, it would be unconscionable to permit the appellee herein to wrongfully assert her fictitious homestead rights to her abandoned home under Sec. 330, Miss. Code of 1942, and thus deprive her benefactor, the appellant here, of those rights which equitably and legally are his. Sec. 330 is a shield to rightfully protect the right of a wife in a bona fide homestead, but not a sword to wrongfully sever from another his legal rights and equities.

For the reasons hereinabove stated, the decree appealed from is hereby reversed and judgment is entered

here dissolving the permanent injunction and adjudging the appellant's deed of trust to be valid, and remanding this cause for the determination only of damages suffered by appellant and for reasonable attorney's fees.

Reversed and judgment here, and remanded for damages and attorney's fees.

*Lee, P. J., and Gillespie, McElroy and Rodgers, JJ.,* concur.