# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 6, 2010

No. 09-60743

Lyle W. Cayce
Clerk

In the Matter of:  NORTHLAKE DEVELOPMENT L.L.C.,

> Debtor

-------------------------------------------------

KINWOOD CAPITAL GROUP, L.L.C.; GEORGE KINIYALOCTS,
Individually and as General Partner of Kiniyalocts Family PTRS. I, LTD.,

> Appellees

v.

BANKPLUS,

> Appellant

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:08-CV-498

Before GARWOOD, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:

BankPlus appeals the district court's affirmance of the bankruptcy court's decision that certain deeds BankPlus held were legal nullities.  Because the case presents an important and determinative question of Mississippi limited liability

No. 09-60743

company and property law for which there is no controlling Mississippi Supreme Court precedent, we certify the question to the Supreme Court of Mississippi.

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF MISSISSIPPI, PURSUANT TO RULE 20 OF THE MISSISSIPPI RULES OF APPELLATE PROCEDURE.

TO THE SUPREME COURT OF MISSISSIPPI AND THE HONORABLE JUSTICES THEREOF:

## I.  STYLE OF THE CASE

The style of the case in which this certification is made is *Kinwood Capital Group, L.L.C. v. BankPlus*, No. 09-60743, in the United States Court of Appeals for the Fifth Circuit.  The case is on appeal from the judgment of the United States District Court for the Southern District of Mississippi, which affirmed the judgment of the United States Bankruptcy Court for the Southern District of Mississippi in the adversary proceeding styled *Kinwood Capital Group, L.L.C. v. Northlake Development, L.L.C. and BankPlus*, pending in the bankruptcy proceeding in said court styled *In re: Northlake Development L.L.C., Debtor*.

## II.  STATEMENT OF FACTS

Three entities and two individuals are the primary actors in this dispute. Kinwood Capital Group, L.L.C. ("Kinwood") is a member-managed Mississippi limited liability company formed in March 1998 for the purpose of purchasing and developing an approximately 520-acre tract of land in Panola County, Mississippi (the "Property").  Kinwood was formed by George Kiniyalocts and Michael Earwood, his attorney and business partner, with Kiniyalocts owning 80 percent of the LLC and Earwood owning 20 percent.  Approximately one

2

No. 09-60743

month later, Kiniyalocts conveyed his interest in Kinwood to a family limited partnership he controlled,[1] less 5 percent of the LLC, which he conveyed to Earwood, so that Kiniyalocts owned 75 percent of the LLC and Earwood owned 25 percent.  Though Kinwood's Certificate of Formation did not contain any limitation on the authority of Kinwood's members to convey Kinwood-owned property, the LLC's Operating Agreement, which was not publicly available, did contain this limitation:

> All management decisions shall be by a vote of the Members owning a majority of the Membership Interests. Notwithstanding any provision in this Agreement to the contrary, the affirmative vote of Members holding at least Seventy-five percent (75%) of all Membership Interests shall be required to approve the sale, exchange, or other disposition of all, or substantially all, of the Company's assets (other than in the ordinary course of the Company's business) which is to occur as part of a single Transaction or plan.

The effect of this limitation was that Kiniyalocts held veto power over any major asset sale.

Kinwood bought the Property at a foreclosure sale for $535,001.  Kinwood and both Kiniyalocts and Earwood in their personal capacities borrowed a total of $575,000 from Mellon Bank to acquire the Property; all three remain liable for that debt.  The plans to re-sell the Property to a golf developer fell apart.  Soon afterwards—in June 2000—Earwood formed Northlake Development, L.L.C. ("Northlake"), with himself as sole owner, managing member, and registered agent for service of process.  Kiniyalocts had no knowledge of Northlake.  Again without Kiniyalocts's knowledge, Northlake undertook a separate negotiation

---

[1]  Kiniyalocts and Kiniyalocts Family Partners I, LTD are referred to collectively as "Kiniyalocts."

No. 09-60743

with the golf developer and entered into a contract. Ultimately, this sale did not close either.

On July 12, 2000, Earwood signed, purportedly on behalf of Kinwood, a warranty deed conveying the Property from Kinwood to Northlake (the "Kinwood Deed"). He signed the document as Kinwood's "Managing Member." The Kinwood Deed was recorded on August 7, 2000. Before recording the deed, Earwood approached BankPlus about borrowing money for Northlake with the Property as collateral. BankPlus agreed to lend Northlake approximately $300,000. In return, Earwood, on behalf of Northlake, executed a deed of trust to the Property in favor of BankPlus (the "BankPlus Deed"). The BankPlus Deed pledged Northlake's interest in the Property as collateral for the loan.[2] BankPlus obtained a title certificate to the Property from Earwood's two-person law firm, signed by Earwood's law partner, on August 10, 2000. Earwood put most and perhaps all of the BankPlus loan proceeds to his personal use.

These facts came to light after Northlake filed for Chapter 11 bankruptcy protection in August 2005. Earwood signed the petition for Northlake and listed the Property as a Northlake asset. After a dismissal and a second bankruptcy filing, the case was converted to a Chapter 7 bankruptcy and the a trustee was appointed.

The bankruptcy court found that Earwood never had the authority to convey the Property from Kinwood to Northlake and that, as a result, the Kinwood Deed could not pass title of any kind. The bankruptcy court entered

---

[2] BankPlus later lent more money to Northlake with the Property as collateral. Earwood executed a new Deed of Trust on behalf of Northlake each time. The deeds of trust are referred to collectively as the "BankPlus Deed."

No. 09-60743

judgment for Kinwood, declared the Kinwood Deed and the BankPlus Deed null and void, and required both to be cancelled in the land records of Panola County.

BankPlus appealed to the district court, which affirmed. The district court noted that no Mississippi court had construed Mississippi LLC law on the ability of an LLC member to bind the LLC in a case where the LLC member's action led an innocent third party to purchase an interest in the property. The court made an *Erie* guess that Earwood's signature on the Kinwood Deed was more akin to a void forgery than a voidable transfer—*i.e.*, one in which a deed is facially valid but induced by fraud.

**III. Legal Issues**

It does not appear that the Mississippi statute governing the agency power of LLC members, MISS. CODE ANN. § 79-29-303, directly controls this case. Because Kinwood is a member-managed LLC, three parts of the statute affect Earwood's power to bind the LLC:

> (1) . . . [E]very member is an agent of the limited liability company for the purpose of conducting its business and affairs, and the act of any member, including, but not limited to, the execution in the name of the limited liability company of any instrument for apparently carrying on in the usual way the business or affairs of the limited liability company of which he is a member, binds the limited liability company, unless the member so acting has, in fact, no authority to act for the limited liability company in the particular matter and the person with whom he is dealing has knowledge of the fact that the member has no such authority.

> (3) An act of a manager or a member which is not apparently for the carrying on in the usual way the business of the limited liability company does not bind the limited liability company unless authorized in accordance with the limited liability company agreement.

5

No. 09-60743

> (4) No act of a manager or member in contravention of a restriction on authority shall bind the limited liability company to persons having knowledge of the restriction.

MISS. CODE ANN. § 79-29-303.[3]

The language in § 79-29-303(4) ("No act of a manager or member in contravention of a restriction on authority shall bind the limited liability company to persons having knowledge of the restriction") does not affect the relationship between Kinwood and BankPlus because the entities did not have any direct contact with one another; the transactions at issue are between (1) Kinwood — Northlake, and (2) Northlake — BankPlus. Nor does it establish that the deed in question is void *ab initio* rather than voidable. The statute addresses the nature of Kinwood's obligations to Northlake; it does not determine whether a deed that is valid on its face, but that does not bind the grantor to the grantee, becomes valid when passed to an innocent third-party purchaser.[4] In other words, § 79-29-303(4) means that the Kinwood Deed was *at least* voidable. That begs the ultimate question.

---

[3] Beginning on January 1, 2011, § 79-29-303 will be re-codified, as amended, at § 79-29-307. *See* 2010 Miss. Laws Ch. 532, H.B. 683, §§ 1, 4. The amendments do not answer, on their face, the question certified here. What will be MISS. CODE ANN. § 79-29-1317 states that the new LLC laws do "not apply to an action or proceeding commenced before the mandatory application date. Prior law applies to the action or proceeding." 2010 Miss. Laws Ch. 532, H.B. 683, § 1.

[4] Discussing a similar fact pattern in the context of Kentucky partnership law, the Sixth Circuit explained that a functionally identical Kentucky statute "simply says that, as a general proposition, the partnership is not bound by partners who act contrary to a restriction on their authority when the parties dealing with the partner had knowledge of the restriction." *Noble v. Nat'l Mines Corp.*, 774 F.2d 144, 147 (6th Cir. 1985). Rather than "mandate that a transaction is *void* when a partner acts contrary to a restriction on his or her authority," the court stated, "[i]t simply protects the partnership by providing that the entity is not bound by that act." *Id.* at 148.

No. 09-60743

Mississippi courts have held several types of deeds voidable rather than void *ab initio*. For example, when a corporation takes an *ultra vires* action not authorized by its charter, the result can usually be ratified and thus cannot have been void *ab initio*. *See Home Owners' Loan Corp. v. Moore*, 185 So. 253, 255 (Miss. 1939) ("An act of a corporation relating to the subjects within its powers though it should exceed those powers is not void."); *see also Haynes v. Covington*, 21 Miss. (13 S. & M.) 408, 1850 WL 3405, at *2 (Miss. 1850).[5]

Similarly, a fraudulent conveyance is voidable rather than void *ab initio—i.e.*, it is subject to the intervening rights of a bona fide purchaser for value without notice of the fraud. *See Parker v. King*, 108 So. 2d 224, 226 (Miss. 1959) (fraudulently induced execution of a mineral deed is voidable); *see also Guice v. Burrage*, 156 F.2d 304, 306 (5th Cir. 1946); *Lee v. Boyd*, 16 So. 2d 30, 30 (Miss. 1943); *Sanders v. Sorrell*, 3 So. 661, 663 (Miss. 1888). A forged conveyance, on the other hand, is void *ab initio* and cannot pass title to a bona fide purchaser. *See Securities Inv. Co. of St. Louis v. Williams*, 193 So. 2d 719, 722 (Miss. 1967) ("The note and trust deed having been forgeries, even an

---

[5] LLCs can also, as a general matter, ratify unauthorized conveyances. *See* 1 LARRY E. RIBSTEIN & ROBERT R. KEATINGE, RIBSTEIN & KEATINGE ON LIMITED LIABILITY COMPANIES § 8:5 (updated Nov. 2009) ("Even if an act is not within a member's agency power, the other members can actually authorize it, engage in conduct that creates the appearance of authority or an estoppel, or ratify the act."). The same treatise takes the position that deeds like the one at issue here are voidable rather than void *ab initio*. "Even if a real property conveyance is unauthorized, if property is held and conveyed in the LLC's name"—as it was here—"the LLC probably cannot attack the conveyance to a remote grantee who lacks knowledge of who holds rights in the chain of title." 1 RIBSTEIN & KEATINGE § 8:10. The treatise writers note, however, that "most LLC statutes, unlike partnership law [statutes], do not make this explicit." *Id.* (footnote omitted). This describes the situation in Mississippi. If Kinwood had been a partnership rather than an LLC, the Kinwood Deed likely would have been voidable rather than void *ab initio* under Mississippi's adoption of the Uniform Partnership Act. *See* MISS. CODE ANN. § 79-13-302(b).

No. 09-60743

innocent purchaser, for value and without notice that they were forgeries, could acquire no title.").

Mississippi courts have held deeds void *ab initio* in homestead cases. A homestead occupied by husband and wife cannot be conveyed without the signature of both spouses, and any deed made without both signatures is absolutely void and passes no title. *See Thornhill v. Caroline Hunt Trust Estate*, 594 So. 2d 1150, 1152 (Miss. 1992).[6]  Mississippi courts have also held unauthorized tax sales by the State to be void *ab initio* rather than voidable. *See Pittman v. Currie*, 391 So. 2d 654, 655 (Miss. 1980); *see also In re Hardy*, 910 So. 2d 1052 (Miss. 2005) (citing a tax sale case in support of its holding that certain deeds made by an agent who exceeded her power of attorney were void *ab initio*); *Money v. Wood*, 118 So. 357, 360 (Miss. 1928); *Hit-tuk-ho-mi v. Watts*, 15 Miss. (7 S. & M.) 363 (Miss. 1846).

We did not find that any of these classes of cases answered the voidable/void *ab initio* question presented here. The issue has serious and potentially far-reaching public policy implications for Mississippi LLCs and those who do business with them. For that reason, we have determined that the better course is to certify the question.

---

[6] The homestead rule is codified by statute, *see* MISS. CODE ANN. § 89-1-29, and its original purpose was highly specific: "these homestead provisions first were listed in the Code of 1880 primarily as a protection for the wife in lieu of dower . . . . The basic purpose was . . . to prevent her husband from conveying or encumbering the homestead without the consent of his wife . . . ." *Grantham v. Ralle*, 158 So. 2d 719, 724 (Miss. 1963).

No. 09-60743

## IV.  QUESTION CERTIFIED

We hereby certify, on our own motion, the following determinative question of law[7] to the Supreme Court of Mississippi:

> When a minority member of a Mississippi limited liability company prepares and executes, on behalf of the LLC, a deed to substantially all of the LLC's real estate, in favor of another LLC of which the same individual is the sole owner, without authority to do so under the first LLC's operating agreement, is the transfer of real property pursuant to the deed: (i) voidable, such that it is subject to the intervening rights of a subsequent bonafide purchaser for value and without notice, or (ii) void *ab initio*, *i.e.*, a legal nullity?

This court disclaims any intention or desire that the Supreme Court of Mississippi confine its reply to the precise form or scope of the question certified. The record and copies of the parties' briefs are transmitted herewith.

This panel retains cognizance of the appeal of this case pending response from the Supreme Court of Mississippi, and this court hereby CERTIFIES the question posed above.

QUESTION CERTIFIED.

---

[7] The question is determinative of the only issue this court will consider on appeal.  In the event the Kinwood Deed is held to be voidable rather than *void ab initio*, Kinwood raises a second argument that BankPlus was not a bonafide purchaser for value.  That fact-intensive determination will be left to the bankruptcy court on remand should it be necessary to do so.