DICKINSON, Presiding Justice,
for the Court:
¶ 1. Michael Earwood, the minority member of Kinwood Capital Group, LLC,[1] secretly formed Northlake Development, LLC, with himself as sole owner. Ear-wood then signed a deed purporting to transfer a parcel of Kinwood’s property to Northlake, which then granted a deed of trust on the property to secure a bank loan. Northlake later defaulted on the loan and filed bankruptcy, listing the property as an asset. Upon learning what Earwood had done, Kinwood’s majority member, George Kiniyalocts, filed an objection in Northlake’s bankruptcy proceeding, arguing that Earwood had no authority to transfer Kinwood’s property, and Northlake’s deed was void. Because Ear-wood had neither actual nor apparent authority to transfer Kinwood’s property, and because Kinwood did not ratify the transaction, it was void and of no legal effect.
BACKGROUND FACTS AND PROCEEDINGS
¶ 2. After Kiniyalocts and his attorney and business partner, Earwood, formed Kinwood to develop property, Earwood secretly formed Northlake Development, LLC, with himself as sole owner, managing member, and registered agent for service of process. Then, on July 12, 2000, Earwood signed a warranty deed as Kin-wood’s “Managing Member,” conveying Kinwood’s property to Northlake.
¶ 3. Northlake applied to BankPlus for a loan, secured by the property. After obtaining a title certificate from Earwood’s two-person law firm, signed by Earwood’s law partner, BankPlus made the loan, taking as collateral a deed of trust on the property. Earwood put most and perhaps all of the BankPlus loan proceeds to his personal use.
¶ 4. When Northlake later filed for Chapter 11 bankruptcy protection, Ear-wood signed the petition, listing the property as a Northlake asset. Kiniyalocts learned what Earwood had done, and contested the deed that purportedly transferred Kinwood’s property to Northlake. The learned bankruptcy judge — finding that Earwood never had the authority to convey the property from Kinwood to Northlake and that the Kinwood deed could not pass title of any kind — entered judgment for Kinwood, declared the Kin-wood deed and the BankPlus deed of trust null and void, and required both to be cancelled in the land records of Panola County.
¶ 5. BankPlus appealed to the district court, which affirmed. BankPlus then appealed to the United States Court of Appeals for the Fifth Circuit, arguing that the Northlake deed was not void, but rather was voidable; and that — because it had taken the deed of trust from Northlake in good faith and without notice that the Kin-wood deed was unauthorized — its deed of trust was enforceable.
¶ 6. The Fifth Circuit, finding that the case “presents an important and determinative question of Mississippi limited liability company and property law for which *795 there is no controlling Mississippi Supreme Court precedent ...,” certified the question to us.[2]
ANALYSIS
¶7. The precise question certified to us by the Fifth Circuit is:
When a minority member of a Mississippi limited liability company prepares and executes, on behalf of the LLC, a deed to substantially all of the LLC’s real estate, in favor of another LLC of which the same individual is the sole owner, without authority to do so under the first LLC’s operating agreement, is the transfer of real property pursuant to the deed: (i) voidable, such that it is subject to the intervening rights of a subsequent bonafide purchaser for value and without notice, or (ii) void ab initio, i.e., a legal nullity? [3]
¶ 8. It is undisputed in the facts presented to us—and implicit in the question certified to us by the Fifth Circuit— that Earwood did not have actual authority to transfer the property. Kinwood’s Operating Agreement includes the following limitation:
All management decisions shall be by a vote of the Members owning a majority of the Membership Interests. Notwithstanding any provision in this Agreement to the contrary, the affirmative vote of Members holding at least Seventy-five percent (75%) of all Membership Interests shall be required to approve the sale, exchange, or other disposition of all, or substantially all, of the Company’s assets (other than in the ordinary course of the Company’s business) which is to occur as part of a single Transaction or plan.
Because Earwood had no actual authority to transfer Kinwood’s property, we now turn to the question of apparent authority.
¶ 9. Although the Mississippi Limited Liability Company Act[4] does not specifically address the issue presented, it does inform our analysis with the following provision, which creates an agency relationship between a member-managed LLC and its members:
[EJvery member is an agent of the limited liability company for the purpose of conducting its business and affairs, and the act of any member, including, but not limited to, the execution in the name of the limited liability company of any instrument for apparently carrying on in the usual way the business or affairs of the limited liability company of which he is a member, binds the limited liability company, unless the member so acting has, in fact, no authority to act for the limited liability company in the particular matter and the person with whom he is dealing has knowledge of the fact that the member has no such authority.[5]
¶ 10. Under this statute, Earwood was an agent of Kinwood for the purpose of conducting “in the usual way” Kinwood’s business and affairs. Generally, an agent cannot bind the principal to a contract unless the principal clothes the agent with *796 authority, whether' actual or apparent.[6] The bankruptcy court found that Earwood lacked Kinwood’s actual authority to enter into the transaction with Northlake; that Earwood knew he had no authority to enter into the transaction; and that Kini-yalocts remained unaware of the unauthorized act until the commencement of bankruptcy proceedings.
¶ 11. Earwood (the sole owner of the grantee, Northlake) certainly knew he had no authority to convey Kinwood’s property to Northlake. And because Ear-wood’s knowledge of his own wrongdoing was imputed to Northlake, it took the property with knowledge that Earwood had no authority to sign the deed. Because the doctrine of apparent authority is unavailable to one who knows an agent lacks actual authority,[7] we must conclude that Earwood did not have apparent authority to transfer the property to North-lake.
¶ 12. The certified question essentially asks us whether the unauthorized conveyance was voidable; that is to say, was it an effective transfer of title unless and until Kinwood repudiated it? If — as BankPlus argues — it was voidable, then the Bank-Plus deed of trust survives. The Fifth Circuit graciously did not confine our “reply to the precise form or scope of the question certified.”[8]
¶ 13. It is settled law in Mississippi that, absent some form of legal authority, an agent is powerless to affect the legal relationship between his principal and others.[9] If an agent purports to act for his principal but is without any legal authority to do so, his action generally[10] has no legal effect on his principal.[11] Nevertheless, our law allows a principal to ratify the agent’s unauthorized acts and, upon doing so, becomes bound. We find the following explanations from the Restatement (Third) of Agency to be illustrative:
Ratification has an immediate effect on legal relations between the principal and agent, the principal and the third party, and the agent and the third party. Ratification recasts those legal relations as they would have been had the agent acted with actual authority. Legal consequences thus “relate back” to the time the agent acted. Ratification creates claims not otherwise present, giving the *797 principal and the third party enforceable rights against each other.... [12]
¶ 14. Ratification does not arise by operation of law; rather, “[a] person ratifies an act by (a) manifesting assent that the act shall affect that person’s legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents.”[13] It is true that, under some circumstances, a principal’s inaction can result in ratification, but only where the principal has notice that others will infer from his silence that he intends to manifest his assent to the act.[14] That is certainly not the case here.
¶ 15. So where no actual or apparent authority exists to transfer a principal’s property, we decline to characterize the deed as voidable. Rather, it is void unless and until later ratified. Ratification is a principal’s after-the-fact, conscious decision to be bound by an agent’s unauthorized act, and it is that decision that can trigger the principal’s liability to third parties. Where the agent has no actual or apparent authority, a principal has no need to repudiate an agent’s unauthorized act in order to “put things back” the way they were. Absent ratification— and prior to ratification — nothing changes.
CONCLUSION
¶ 16. Earwood was without authority (actual or apparent) to convey the property to Northlake. The conveyance therefore had no effect on Kinwood’s interest in the property. Once Kinwood learned of the purported conveyance, it could have ratified it — but didn’t. Kinwood’s rights in the property are therefore unaffected by the actions of Earwood, Northlake, or any other subsequent party.
¶ 17. CERTIFIED QUESTION ANSWERED.
WALLER, C.J., CARLSON, P.J., RANDOLPH, LAMAR, KITCHENS, CHANDLER, PIERCE AND KING, JJ., CONCUR.

. Kinwood is a member-managed, Mississippi limited-liability company. See generally Miss. Code Ann. §§ 79-29-101 to 79-29-1201 (Rev.2009).

. Kinwood Capital Group v. BankPlus (In re Northlake Dev., L.L.C.), 614 F.3d 140, 145 (5th Cir.2010). See also M.R.A.P. 20.

. Kinwood, 614 F.3d at 145.

. Miss.Code Ann. §§ 79-29-101 to 79-29-1204 (Rev.2009). Because the LLCs in this case all were formed before January 1, 2011, they are not subject to the provisions of the Revised Mississippi Limited Liability Company Act. See Miss.Code Ann. § 79-29-1301 (Supp.2010). We therefore consider the provisions of the unrevised Act.

. Miss.Code Ann. § 79-29-303(1) (Rev.2009).

. Christian Methodist Episcopal Church v. S & S Constr. Co., 615 So.2d 568, 572 (Miss.1993) (citing Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172, 1180 (Miss.1990)).

. Mladineo v. Schmidt, 52 So.3d 1154, 1167 (Miss.2010) ("Apparent authority exists when a reasonably prudent person, having knowledge of the nature and usages of the business involved, would be justified in supposing, based on the character of the duties entrusted to the agent, that the agent has the power he is assumed to have.”).

. Kinwood, 614 F.3d at 145.

. Patriot Commercial Leasing Co. v. Jerry Enis Motors, Inc., 928 So.2d 856, 865 (Miss.2006) (citing 2 C.J.S. Agency §§ 95, 96); Johnson v. Blasdale, 9 Miss. (1 S. & M.) 17 (1843) ("The act of an agent who exceeds his authority, is binding upon his principal to the extent of his authority, but is void for the residue.”). See also Restatement (Third) of Agency § 1.01 cmt. c (2005) ("Only interactions that are within the scope of an agency relationship affect the principal’s legal position.”).

. The notable exception — inapplicable here — is where, despite the absence of an agency relationship, a "principal” may be es-topped from denying agency. Ala. Great S.R.R. Co. v. McVay, 381 So.2d 607, 612 (Miss.1980) (citing Restatement (Second) of Agency § 8B (1958)). See also Restatement (Third) of Agency § 2.05 (2005).

. He may, however, be liable to the other contracting party for breach of contract, breach of warranty of authority, or some other cause of action against the agent himself.

. Restatement (Third) of Agency § 4.02 cmt. b. (2005) (emphasis added). See also Barnes, Broom, Dallas & McLeod, PLLC v. Estate of Cappaert, 991 So.2d 1209, 1212 (Miss.2008) (citing Autry v. State, 698 So.2d 84, 87 (Miss.1997)).

. Restatement (Third) of Agency § 4.01(2) (2005) (emphasis added). See also Estate of Cappaert, 991 So.2d at 1212 ("Ratification may be established through affirmative acts or inaction.”).

. Restatement (Third) of Agency § 4.01 cmt. f (2005).