# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-CA-00127-SCT

*ACE AMERICAN INSURANCE COMPANY,
ALLIANZ GLOBAL RISKS US INSURANCE
COMPANY, AXIS SPECIALTY EUROPE S.E.,
ENDURANCE WORLDWIDE INSURANCE
LIMITED, HELVETIA SWISS INSURANCE
COMPANY, LTD., HOUSTON CASUALTY
COMPANY, MS AMLIN CORPORATE MEMBER
LIMITED, NAVIGATORS MANAGEMENT
COMPANY, INC., PARTNER RE IRELAND
INSURANCE DAC, SWISS RE INTERNATIONAL
S.E., LUXEMBOURG, ZURICH BRANCH, XL
INSURANCE AMERICA, INC., ZURICH
AMERICAN INSURANCE COMPANY, NATIONAL
UNION FIRE INSURANCE COMPANY OF
PITTSBURGH, PA., OKLAHOMA SPECIALTY
INSURANCE COMPANY, QBE INSURANCE
(EUROPE) LIMITED, HDI GLOBAL INSURANCE
COMPANY, SCOR UK COMPANY LIMITED, XLC
2003, ASPEN SPECIALTY INSURANCE
COMPANY, AXIS MANAGING AGENCY LTD.
FOR AXIS SYNDICATES 1686 AND 2007 F/K/A
NOVAE SYNDICATE 2007, GREAT LAKES
INSURANCE SE, TALBOT UNDERWRITING
LTD., MARKEL BERMUDA LIMITED,
STARSTONE UNDERWRITING LIMITED, ARGO
MANAGING AGENCY LIMITED, ALLIED
WORLD ASSURANCE COMPANY, LTD.,
PIONEER NATURAL RESOURCES AS
SUBROGEES OF ENTERPRISE PRODUCTS
PARTNERS L.P., ENTERPRISE PRODUCTS
PARTNERS L.P., AND ENTERPRISE GAS
PROCESSING, LLC*

*v.*

*HETSCO, INC.*

DATE OF JUDGMENT:              12/28/2022
TRIAL JUDGE:                   HON. DALE HARKEY
TRIAL COURT ATTORNEYS:         J. CHADWICK MASK
                               CHARLES E. GRIFFIN
                               DONNA BROWN JACOBS
                               CHRISTOPHER HERBERT COLEMAN
                               JACK C. PICKETT
                               JAMES GUNN, III
                               JIM WARREN, III
                               ROBERT P. THOMPSON
                               PAUL P. BLAKE
                               H. BENJAMIN MULLEN
                               JOHN AARON EARNHARDT
                               BRYAN ARTHUR COLEMAN
COURT FROM WHICH APPEALED:     JACKSON COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANTS:      DONNA BROWN JACOBS
                               CHARLES E. GRIFFIN
                               J. CHADWICK MASK
ATTORNEYS FOR APPELLEE:        PAUL P. BLAKE
                               ROBERT P. THOMPSON
NATURE OF THE CASE:            CIVIL - CONTRACT
DISPOSITION:                   REVERSED AND REMANDED - 09/26/2024
MOTION FOR REHEARING FILED:

**BEFORE KITCHENS, P.J., MAXWELL AND CHAMBERLIN, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.    On June 27, 2016, a gas processing plant in Moss Point was damaged due to an explosion. Enterprise Gas Processing LLC, the owner of the plant at the time of the explosion, filed suit against Hetsco Inc., alleging that negligent repair of the Train A Cold Side Reboiler had caused the explosion. Hetsco contended that terms of a Proposal for Services between Hetsco and the prior owner of the plant entitled it to summary judgment. The circuit court agreed. This case is before this Court on appeal from the grant of summary

2

judgment in favor of Hetsco. This Court finds that genuine issues of material fact remain and that summary judgment was premature. The circuit court's grant of summary judgment is reversed, and the case is remanded for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2. In August 2015, a leak in the Train A Cold Side Reboiler, a brazed aluminum heat exchanger,[1] was discovered at the Pascagoula Gas Processing Plant in Moss Point. At the time, British Petroleum (BP) owned a majority interest in the plant and controlled its operation. Enterprise Gas Processing LLC owned a minority interest in the facility.

¶3. BP had an ongoing relationship with Hetsco Inc. (Hetsco) as a vendor that would come and perform repairs when needed. It is alleged that Hetsco "claims over 30 years of experience repairing heat exchangers" and "claims to have 'Critical Vendor' status with many customers" due to its "vast knowledge of industry processes and equipment operation[.]" The BP and Hetsco relationship was memorialized by a Master Service Agreement (MSA) that expired in February 2015 prior to the repair. Emails were introduced as summary judgment evidence showing that in June and August of 2015 there were ongoing attempts to update the MSA. These attempts apparently failed.

¶4. Following the usual protocol, on August 25, 2015, a Purchase Order was generated at the plant and signed by BP plant manager Richard Rose requesting that Hetsco "inspect/repair the damaged exchanger" for an estimated cost of $20,000. The Purchase

---

[1]The "train" is used to process natural gas. The parties represent that the facility in Moss Point contains "three separate gas processing plants consisting of various trains containing different components, as well as other piping and equipment, with the capacity of processing 1.5 billion cubic feet per day of raw gas."

Order was sent via email by Gayden Hayes, a BP mechanical planner, to Scott Willard, the director of operations at Hetsco. Rose and others were copied on the email.

¶5. The exchanger was shipped to Hetsco's facilities in Indiana where Hetsco employees determined the cause of the leak. On September 8, 2015, at 2:06 p.m., Scott emailed Hayes a document entitled Proposal for Services and stated that repair on the exchanger would proceed once approval was given.[2] The Proposal for Services was a standardized document that Scott sent for every project, even those covered under the MSA. The Proposal for Services included terms and conditions such as a forum-selection clause, choice of law provision, successor and assignee clause and a statute of limitations provision. Scott had written into the document specific information on the scope of work and updated the estimated cost to $66,900 for the project.

¶6. The same day, Hayes responded at 3:59 p.m. stating, "Thanks for the update Scott, please proceed with the repairs with our approval. Do you want me to update the hard copy [Purchase Order]?" From the emails in the record it is unclear that any other person was copied on this email. It appears to only be from Hayes to Scott. Scott stated that they would wait until the final invoice to finalize the Purchase Order. The exchanger was eventually repaired and reinstalled.

¶7. In early 2016, Enterprise purchased BP's majority ownership of the plant and control of the operations. On June 27, 2016, an explosion occurred at the plant. It is alleged that the

---

[2]The only people copied on this email were Brian Schommer, a BP plant engineer, David Leiser, an third-party inspector, Patrick Lester, a Hetsco operations coordinator and Phill Sullivan, a Hetsco repair foreman.

4

cause of the explosion was Hetsco's negligent repair of the heat exchanger. The majority of the damage was in the Train A Cold Side Reboiler, but "physical damage extended to Trains B and C, as well as various shared utility, piping and support structures." An investigation of the damage was undertaken by the government, Enterprise and Hetsco. In March 2017, during the investigation, Enterprise inquired of Hetsco's counsel as to whether a contract was in place for the repair of the exchanger. Enterprise alleges that Hetsco "unequivocally stated that no contract existed[.]"

¶8. On November 21, 2018, Enterprise's insurance companies, as subrogees of Enterprise, filed suit against Hetsco in Jackson County Circuit Court. On January 7, 2019, Hetsco responded with a Motion to Dismiss and to Stay Discovery. Hetsco attached to its motion a copy of the Proposal for Services and argued that, according to the terms of the agreement for the repair between it and BP, the suit had to be brought in the state of Indiana, a contractually agreed upon two year limitations period had expired and discovery should be stayed until resolution of its Motion to Dismiss.

¶9. The subrogees responded to the Motion to Dismiss, arguing against consideration of evidence outside the pleadings on a motion to dismiss and arguing that this was the first time it had ever seen the Proposal for Services between Hetsco and BP. The response further argued that venue was proper in Jackson County where the explosion occurred, the alleged contract did not apply and discovery should proceed.

¶10. By order, on June 6, 2019, Hetsco's motion to dismiss was denied, and limited discovery was granted for matters related to the Proposal for Services and other documents

5

relevant to the repair. On June 21, 2019, interrogatories, requests for admission and requests for production of documents were propounded to Hetsco.

¶11.  Another suit was filed on June 26, 2019, by Enterprise Products Partners L.P. and Enterprise Gas Processing LLC against Hetsco and Acuren, the company responsible for inspecting Hetsco's repair. The judge consolidated the cases by order on October 2, 2019, and Acuren was eventually dismissed.[3] The plaintiffs became Enterprise Products Partners L.P., Enterprise Gas Processing LLC and its various insurers (collectively, "Enterprise").[4] Hetsco is the only remaining defendant.

¶12.  On August 2, 2019, Enterprise filed motions to compel responses to its discovery and to set a hearing. Hetsco responded to the motions to compel, arguing that the discovery sought evidence protected by attorney client privilege and the work product doctrine. The parties attended a hearing on August 27 at which Hetsco was ordered to create and submit a privilege log. A ruling on the motions to compel was withheld until an in-camera review of the privilege log occurred. On November 18, 2019, Hetsco produced the privilege log.

---

[3]The parties do not argue any issues related to that dismissal on appeal.

[4]ACE American Insurance Company; Allianz Global Risks US Insurance Company; AXIS Specialty Europe S.E.; Endurance Worldwide Insurance Limited; Helvetia Swiss Insurance Company Ltd.; Houston Casualty Company; MS Amlin Corporate Member Limited; Navigators Management Company Inc.; Partner Re Ireland Insurance DAC; Swiss Re International S.E., Luxembourg, Zurich Branch; XL Insurance America, Inc.; Zurich American Insurance Company; National Union Fire Insurance Company of Pittsburgh, Pa.; Oklahoma Specialty Insurance Company; QBE Insurance (Europe) Limited; HDI Global Insurance Company; SCOR UK Company Limited; XLC 2003; Aspen Specialty Insurance Company; AXIS Managing Agency Ltd. for AXIS Syndicates 1686 and 2007 f/k/a Novae Syndicate 2007; Great Lakes Insurance SE; Talbot Underwriting Ltd.; Markel Bermuda Limited; Starstone Underwriting Limited; Argo Managing Agency Limited; Allied World Assurance Company Ltd.; and Pioneer Natural Resources

¶13.   On January 24, 2020, Hetsco moved for summary judgment, arguing that the repair work was controlled by the Proposal for Services, which it claimed was binding on Enterprise.  Hetsco attached the complaint, responses to interrogatories, purchase order, service contract, email correspondences, payment documentation and invoices.  Enterprise responded, arguing that summary judgment was premature and that Hetsco should be equitably estopped from arguing the enforcement of the Proposal for Services.  Additional discovery ensued, and more exhibits and depositions were submitted by the parties in their responses.

¶14.   On April 16, 2021, the parties attended a final hearing at which they made their arguments on the motion for summary judgment and other motions before the court.  On December 27, 2022, the judge entered an order granting summary judgment in favor of Hetsco.  The court stated that, after reviewing the pleadings and evidence, it found that "Hetsco believed that Hayes was communicating BP's acceptance of the Proposal for Services including the terms and conditions contained therein[.]"  Further, the court found that "the subject Proposal for Services is a valid and enforceable contract."  Accordingly, the forum-selection clause in the contract was found to be mandatory and "broad enough to capture the tort claims of Plaintiffs."  The motion for summary judgment was granted, and all other requests for relief were denied.  Enterprise filed a notice of appeal on January 24, 2023.

**ISSUES PRESENTED**

¶15.   Enterprise's arguments are summarized as follows:

7

I.      Whether the circuit court erred by summarily finding that Hayes had apparent authority to bind BP to the Proposal for Services.

II.     Whether BP ratified the Proposal for Services.

III.    Whether Enterprise can be bound by the Proposal for Services.

## STANDARD OF REVIEW

¶16.    This Court is reviewing the circuit court's grant of Hetsco's motion for summary judgment. This Court reviews motions for summary judgment de novo. *Webb v. Braswell*, 930 So. 2d 387, 395 (Miss. 2006) (citing *Williams v. Bennett*, 921 So. 2d 1269, 1271 (Miss. 2006)). "The movant carries the burden of demonstrating that no genuine issue of material fact exists, and the non-moving party is given the benefit of the doubt as to the existence of a material fact." *Id.* (citing *McCullough v. Cook*, 679 So. 2d 627, 630 (Miss. 1996)). Accordingly, this Court is required to view the facts in the light most favorable to Enterprise and will affirm the grant of summary judgment to Hetsco only if no genuine issues of material fact remain.

## DISCUSSION

### I.      Whether the circuit court erred by summarily finding that Hayes had apparent authority to bind BP to the Proposal for Services.

¶17.    Hetsco argues that Hayes had authority to accept all terms and conditions of the Proposal for Services on behalf of BP and that this contract now binds Enterprise. Enterprise produced an affidavit from Rose, who was and is the plant manager, stating that "[t]o my knowledge, no Plant level personnel had any authority from BP to accept terms and conditions in a contract on behalf of BP or to otherwise bind BP to terms and conditions from

8

third parties." Accordingly, actual authority is not argued. Instead, the issue is apparent authority.

¶18. "Apparent authority exists when a reasonably prudent person, having knowledge of the nature and usages of the business involved, would be justified in supposing, based on the character of the duties entrusted to the agent, that the agent has the power he is assumed to have." *Mladineo v. Schmidt*, 52 So. 3d 1154, 1167 (Miss. 2010) (internal quotation marks omitted) (quoting *Andrew Jackson Life Ins. Co. v. Williams*, 566 So. 2d 1172, 1180 (Miss. 1990)). Three factors must be present for a finding of apparent authority: "(1) acts or conduct on the part of the principal indicating the agent's authority, (2) reasonable reliance on those acts, and (3) a detrimental change in position as a result of such reliance." *Id.* (citing *Williams*, 566 So. 2d at 1180). "[T]he principal is bound if the conduct of the principal is such that persons of reasonable prudence, ordinarily familiar with business practices, dealing with the agent might rightfully believe the agent to have the power he assumes to have." *Eaton v. Porter*, 645 So. 2d 1323, 1325 (Miss. 1994) (alteration in original) (quoting *Steen v. Andrews*, 223 Miss. 694, 697, 78 So. 2d 881, 883 (1955)). "Whether an agent has the apparent authority to bind the principal is a question of fact to be determined by the chancellor, or if in circuit court, by the jury." *Id.* (citing *Alexander v. Tri-Cnty. Coop. (AAL)*, 609 So. 2d 401, 403 (Miss. 1992)).

¶19. The circuit court found that "the statements by Hayes, in conjunction with the supporting documentation, indicate that Hetsco believed that Hayes was communicating BP's acceptance of the Proposal for Services, including the terms and conditions contained therein,

9

and based upon this acceptance, Hetsco commenced the subject repair." The judge further found that the Proposal was "a valid and enforceable contract."

¶20. Enterprise, on appeal, challenges the circuit court's finding of apparent authority by asserting that Hetsco failed to offer "evidence of any conduct by BP from which one reasonably could conclude this plant-level contact (Hayes) could bind his multi-billion-dollar corporate employer to any terms and conditions, much less a forum selection clause." Enterprise argues that "Hetsco has offered insufficient evidence that Hayes's apparent authority extended to any act beyond what BP's plant-level employees had done before: approve the scope of work and the estimated cost." Enterprise also argues that there is no evidence to support the finding that Hetsco would not have done the repairs if BP had not agreed to the boilerplate terms and conditions. Enterprise contends that the evidence shows that the Proposal for Services was sent in response to every Purchase Order, even when the terms of an MSA were in place.

¶21. Hetsco contends that because Hayes, as BP's mechanical planner, had a BP email address and title and copied Rose on the initial purchase order for the repair, BP gave the impression that Hayes had authority. Hetsco contends that when Hayes stated in his email, "please proceed with the repairs with our approval[,]" Scott, the only Hetsco employee in communication with Hayes over the Proposal for Services, believed Hayes had authority to accept the Proposal for Services.

¶22. Scott was deposed by the parties. He stated that in June 2015 he had received emails regarding the expiration of the MSA with BP and knew that the terms of the MSA were not

negotiated with the plant-level employees. The emails he received were from what he assumed was a contracts group at BP that had the responsibility of negotiating terms and conditions. Scott stated that neither he nor, to his knowledge, the president of Hetsco could negotiate legal terms and conditions because Hetsco was owned by Global Power Equipment Group, the attorneys of which handled the negotiations. Scott knew that BP was a much bigger company than Hetsco and assumed that Hetsco and BP had a similar hierarchy of authority.

¶23. Scott had been told to use the template Proposal for Services on every repair job regardless of the existence of an MSA. Scott stated that Hetsco had MSAs with many different companies. When repair work was needed, the company would initiate the repair with Hetsco through a purchase order. Scott, in response to the purchase order, would then send the Proposal for Services to his contact at the plant or location for the purpose of giving an estimate for the repair. Scott would send the Proposal for Services on every project regardless of whether an MSA was in effect or if the terms in the Proposal for Services varied from the terms in an MSA.

¶24. Scott stated that he did not discuss the legal terms with Hayes and only had authority to change the scope of work and price for each project. Scott stated that he had no understanding at the time he sent the document whether the legal terms had any significance; he was just doing what he was told. Scott stated that although he did not know Hayes's level of authority, he assumed Hayes had the authority to grant approval to move forward with the work. Scott stated that he assumed that "for BP to issue a PO, that they were good with

11

either an MSA or the proposal that was sent." On this project, he assumed that there was "authority on their end to grant us authorization to work."

¶25. Sam Willard, the president of Hetsco at the time of the repair, was also deposed. Sam stated that he did not have authority to negotiate an MSA on behalf of Hetsco and that all legal terms and conditions had to be approved by Global Power. He stated that he did not know BP's process of negotiating or hierarchy of authority but did not expect that plant-level employees "could agree to certain contractual terms and conditions." Sam later submitted an affidavit stating that he wished to clarify that statement was given in the context of negotiating a long-term MSA.[5] He further stated that he thought Scott was reasonable in his belief that "the BP employee in question had authority to accept Hetsco's one-time repair contract on behalf of BP."

¶26. Hetsco contends that this testimony proves that there was reasonable belief that Hayes could bind BP to all the terms in the Proposal for Services. Hetsco contends that Rose's affidavit did not deny Hayes had authority but merely stated that to his knowledge Hayes did not have authority. Further, when Hayes said in his email, "please proceed with the repair with *our* approval," that communicated the approval of the company. Hetsco further states that "Hayes is deceased and there is no evidence disputing Hetsco's reasonable belief that Hayes had authority to accept the terms" of the Proposal for Services.

¶27. Enterprise contends that Scott did not identify "a single word or act by BP from which he could conclude Hayes had authority to do anything more" than approve the scope and

_____

[5]Enterprise challenged the affidavit with a Motion to Strike. In ruling on summary judgment, the circuit court stated that all other relief was denied.

price of repair.  According to Enterprise, any agreement to legal terms must have been outside the scope of Hayes apparent authority.  Enterprise relies on the Court of Appeals' decision in *Diversicare of Meridian, LLC v. Shelton*, 334 So. 3d 487 (Miss. Ct. App. 2022). In *Diversicare*, the parties disputed the enforceability of an arbitration agreement.  *Id.* at 492. One of the arguments against enforcement was that Linda Shelton had signed the arbitration agreement upon entering the Diversicare of Meridian nursing home on behalf of her mother, Sarah Hamrick, without either actual or apparent authority.  *Id.* at 495.

¶28.   Hamrick had verbally informed Diversicare that "Shelton could sign documents for her[,]" granting her "express authority to act on her behalf to a certain extent."  *Id.*  at 496. Shelton, however, presented an affidavit stating that her authority from Hamrick was limited in scope to documents necessary to complete admission to the nursing home, which would not include the arbitration agreement that specifically stated it was "not a condition of admission . . . in the center."  *Id.* at 491 (internal quotation mark omitted).  Diversicare had no legal documentation to prove Shelton was granted any authority beyond the verbal confirmation by Hamrick.  *Id.* at 491.  "There was no proof that Shelton had customarily signed for her mother in the past. Nor was there any proof that any of the individual documents were discussed with Hamrick."  *Id.* at 497.

¶29.   The court noted that "[i]n Mississippi, agency and the scope thereof may be proved through the testimony of the agent alone."  *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Gross v. GGNSC Southaven, L.L.C.*, 817 F.3d 169, 179 (5th Cir. 2016)).  Relying on Shelton's uncontradicted affidavit, the court found that Diversicare had

failed to produce evidence to prove that Shelton's authority extended beyond the verbal grant by Hamrick to sign documents for admission. *Id.* at 499. Accordingly, the trial court's denial of a motion to compel arbitration was affirmed. *Id.*

¶30. Hetsco does not address ***Diversicare***. This Court, however, finds that ***Diversicare*** provides guidance on evaluating the scope of apparent authority. Enterprise argues that Hetsco, similar to Diversicare, has offered insufficient proof that Hayes's authority extended beyond what a plant-level employee had done before, which was to approve the scope and cost of the work. Further, Enterprise contends that Hetsco has not pointed to any record evidence that would support a finding that Hayes had authority to agree to contractual terms, which Scott knew were handled by a different group of people within BP.

¶31. Hetsco relies on ***Williams v. Kilgore***, 618 So. 2d 51, 56 (Miss. 1992), for the proposition that an agent may be vested with apparent authority as a matter of law based on custom and practice. ***Williams*** was a medical-malpractice case in which one issue on appeal was whether the doctor had been properly served. *Id.* at 53, 56. The Court found that service of process was accepted by an office manager who had on prior occasions accepted service of process without objection. *Id.* at 56. The Court stated, "[w]e find nothing in our case law which precludes the acceptance of service of process by an agent such as an office manager, who, by custom and practice, is vested with apparent authority to do so." *Id.* Hetsco does not further develop its reliance on ***Williams*** to explain how custom and practice support a finding of apparent authority in this case.

¶32. Enterprise, however, argues that BP and Hetsco's prior course of dealings shows a

genuine issue of material fact as to apparent authority. Enterprise contends that the email communications that were produced between Scott, Rose and Hayes prove that the parties were operating according to their custom. As was their custom, BP created a PO stating that repairs were needed and Hetsco responded with their standard Proposal for Services document. Enterprise contends Scott's deposition proves Scott's understanding was that Hayes could authorize the repair but that Scott never said that Hayes had authority to agree to the legal terms. Because of the "long-standing business practice between Hetsco and BP," Enterprise contends that Scott's belief that "Hayes could approve anything beyond the estimated cost and scope of repairs would be unreasonable." Enterprise encourages this Court to consider the course of dealings between the parties as support in overturning the grant of summary judgment. *See Alexander*, 609 So. 2d at 404 ("course of past dealings was but one factor that could be considered by a jury").

¶33. Consideration of the prior practice and customs of the parties indicates that it was the parties' custom to discuss scope and price of work but not legal terms. Further, Scott's testimony was consistent that he thought Hayes had authority to authorize the repair and that either an MSA, when in effect, or a Proposal for Services was acceptable. Scott did not testify as to whether he believed Hayes was agreeing to legal terms and conditions on behalf of BP or merely giving permission to start the repairs. The evidence before this Court does not include any indication that Hayes had ever before agreed to the legal terms or whether he had ever been vested with authority to agree to such terms. Hetsco is correct that Rose's affidavit does not deny Hayes ever had the authority. Instead, Rose merely states that to his

15

knowledge, no plant-level employee had such authority. The record also does not show whether anyone at the BP plant knew that the MSA had expired or whether BP intended for Hayes to give approval to the Proposal for Services.

¶34. Hetsco claims that it would not have proceeded with the repair without the Proposal for Services. The circuit court based its finding in part on this claim when it stated that "[o]nly upon receiving this acceptance did Hetsco begin the repairs as outlined in the proposal." Enterprise contends that there is no evidence to support this contention and argues that, instead, "repair work routinely was done for BP under an MSA with its own terms and conditions."

¶35. We find the record contradictory on this issue. Hetsco does not cite any specific record evidence to support its contention that it would not have done the repairs without the Proposal for Services. The email from Scott to Hayes stating that the repair would be undertaken once given approval does not indicate that agreement to the terms in the Proposal for Services was a condition. The email could just as reasonably convey that Scott wanted approval for the cost and plan for the repairs, which was the substance of the discussions between the BP and Hetsco employees. Further, Scott's testimony was that he assumed when a PO was issued, the company was good with either a Proposal for Services or an MSA. Further, Enterprise has shown that Hetsco was not immediately aware of any contract for the repairs. It is contradictory for Hetsco to claim that the terms in the Proposal for Services were a condition for proceeding with the repairs when it had previously proceeded under an MSA and, for a time, it was not even aware that there ever was a contract.

16

¶36. This Court has stated "that the issue of one's apparent authority to act for another is a factual one, and when a motion for summary judgment is made, the court does not decide questions of fact, but merely determines if there are such factual questions to be decided at trial on the merits." *Alexander*, 609 So. 2d at 404 (citing *Lowery v. Guar. Bank & Tr. Co.*, 592 So. 2d 79, 81 (Miss. 1991)). Taking the evidence in the light most favorable to Enterprise, a genuine issue of material fact exists as to apparent authority. The circuit court's grant of summary judgment is reversed, and the case is remanded to the circuit court for further proceedings.

## II.  Whether BP ratified the Proposal for Services.

¶37. Hetsco also argued in the motion for summary judgment that, whether Hayes had authority or not, BP ratified the Proposal for Services. "Ratification does not arise by operation of law; rather, '[a] person ratifies an act by (a) *manifesting assent* that the act shall affect that person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents.'" *In re Northlake Dev. L.L.C. v. BankPlus*, 60 So. 3d 792, 797 (Miss. 2011) (alteration in original) (internal quotation marks omitted) (quoting Restatement (Third) of Agency § 4.01(2) (2005)). "Ratification is a principal's after-the-fact, conscious decision to be bound by an agent's unauthorized act[.]" *Id.*

¶38. The circuit court did not rule on this issue because it found that Hayes had apparent authority to agree to the Proposal for Services. This issue is raised by Hetsco in its brief as an alternative basis for the grant of summary judgment before this Court. We find genuine issues of material fact remain as to the question of ratification, and this issue is also

17

remanded.

¶39.    Hetsco argues that BP ratified its assent to be bound by the Proposal for Services when it paid, without objection, under the terms of the Proposal for Services.  Enterprise disputes Hetsco's argument by presenting emails between Hetsco and BP that show BP and Hetsco employees discussing difficulties with payment for the repair.  Enterprise argues that the emails further prove that BP did not pay according to the terms of the Proposal for Services.  The Proposal for Services required payment from BP within fifteen days of the invoice.  BP stated in an email that it would pay Hetsco within thirty days of the invoice. There is no evidence that Hetsco sought to enforce the fifteen-day term.

¶40.    Hetsco also argues that Enterprise did not respond to this basis for summary judgment in the trial court, so it waived the right to argue this issue on appeal.  Hetsco cites *Holcomb, Dunbar, Watts, Best, Masters &Golmon, P.A v. 400 S. Lamar Mad Hatter Partners, LLC*, 335 So. 3d 568 (Miss. 2022), to support its argument that because Enterprise failed to address a reason for summary judgment, it cannot challenge the argument on appeal.  The case does not, however, support Hetsco's argument.  Part of the Court's finding in that case was that Holcomb Dunbar had waived a ground for partial summary judgment "because it was not specifically pleaded in its answer."  *Id.* at 574.  The case is different both procedurally and factually.  We find Enterprise has not waived the issue.  The evidence was considered by the circuit court, and this Court is entitled to review it.

¶41.    The point is moot, however, as the evidence on this motion for summary judgment is insufficient to show that BP made an "after-the-fact, conscious decision to be bound by the

18

agent's unauthorized act[.]" ***In re Northlake Dev. L.L.C.***, 60 So. 3d at 797. There is no evidence that BP knew of the legal terms in the Proposal for Services and took actions that would justify a reasonable assumption that it agreed to the terms. ***Id.*** From the emails, this Court only knows that BP and Hetsco were discussing payment of $62,460.32 for repairs. The email chains do not reveal if Hetsco sent the Proposal for Services along with its emails requesting payment. No other evidence is presented showing that BP's payment manifested its assent to be bound to legal provisions. Taking the facts in the light most favorable to Enterprise, a genuine issue of material fact exists as to whether BP ratified the Proposal for Services.

### III.    Whether Enterprise can be bound by the Proposal for Services.

¶42.    The circuit court did not explain how finding that BP's employee Hayes had apparent authority to bind BP would bind Enterprise to the Proposal for Services. The parties set forth multiple alternative arguments for and against summary judgment. The Court will briefly address these issues. We find, however, that only one of the following arguments can be resolved on summary judgment.

#### A.    *Arguments that Enterprise is Bound*

¶43.    Hetsco argues that because Enterprise co-owned the plant, it and BP were either in a joint venture or a partnership. Hetsco further argues that Enterprise is thereby bound by the actions of its joint venturer. Hetsco also contends that Enterprise is bound by the Proposal for Services as a successor or assignee of BP. Both of these arguments depend on a finding that BP is bound by the Proposal for Services. The circuit court did not rule on either of

19

these issues. Because this Court has found that genuine issues of material fact remain as to whether BP was bound by the Proposal for Services, we will not address the merits of this argument. These issues are preserved on remand for consideration by the circuit court.

### B. Equitable Estoppel

¶44. Defensively, Enterprise argues that equitable estoppel prohibits Hetsco from enforcing the terms of the Proposal for Services. Although it was raised and argued, the circuit court did not discuss this argument in its final order. Enterprise submits, however, that by ruling that Enterprise was bound by the Proposal for Services, the issue was inherently rejected. We agree that the circuit court rejected Enterprise's equitable estoppel argument.

¶45. "Equitable estoppel has three elements '(1) Belief and reliance on some representation; (2) Change of position, as a result thereof; (3) Detriment or prejudice caused by the change of position.'" *Univ. of Miss. Med. Ctr. v. Aycock*, 369 So. 3d 534, 541 (Miss. 2023) (internal quotation marks omitted) (quoting *State ex rel. Watson v. R.W. Dev., LLC*, 357 So. 3d 1028, 1038 (Miss. 2023)). "Equitable estoppel 'precludes a party from denying a material fact which he has previously induced another to rely upon, whereby the second party changed his position in such a way that he would suffer injury if denial was allowed.'" *Gulf Guar. Life Ins. Co. v. Duett*, 671 So. 2d 1305, 1309 (Miss. 1996) (quoting *Christian Methodist Episcopal Church v. S&S Constr. Co., Inc.*, 615 So. 2d 568, 571-72 (Miss 1993)). "Concerning the application of equitable estoppel, '[the] issue becomes a question for the trier of fact when there is evidence to support a finding that the plaintiff reasonably relied on the actions of the defendant to his detriment.'" *Trosclair v. Miss. Dep't of Transp.*,

757 So. 2d 178, 181 (Miss. 2002) (alteration in original) (citing *Miss. Dep't of Pub. Safety v. Stringer*, 748 So. 2d 662, 668 (Miss. 1999) (Banks, J., dissenting)).

¶46.    To reiterate, the repair occurred in September of 2015; Enterprise bought the plant in early 2016.  The explosion occurred in June 2016.  It is alleged by Enterprise that, in March of 2017, counsel for Hetsco and counsel for Enterprise were discussing and investigating the explosion.  Enterprise asked Hetsco if there was a contract for the repair and alleges that Hetsco emphatically said no.  Enterprise contends that Hetsco described the repair as "more like some maintenance guy who does some work at your house."  Hetsco admits there was a conversation but disagrees with Enterprise's interpretation.  Hetsco argues that it told Enterprise that its paperwork was disorganized, so it was unsure if there was a contract. Hetsco states that it advised Enterprise to contact BP to confirm the existence or nonexistence of a contract.

¶47.    The actual conversation is a factual dispute that was not resolved by the circuit court. Enterprise contends that it relied to its detriment on its version of these statements from Hetsco's representative.

¶48.    Enterprise argues that "[b]y misrepresenting the existence of a contract until Enterprise filed its negligence claims in Mississippi, Hetsco effectively denied Enterprise any forum in which to litigate those claims."  Enterprise argues that, in reliance on Hetsco's attorney's statements that there was no contract, it decided when and where to file the claims based on its understanding that standard procedure applied.  It did not know until November of 2018 of the Proposal for Services or of the two-year contractual statute of limitations that

expired in September of 2017. Enterprise claims that it will likely be unable to litigate these claims in any forum if the Proposal for Services is enforced.

¶49. Enterprise relies on *Trosclair* and *Aycock* to support its argument that genuine issues of material fact remain as to whether Enterprise relied to its detriment on Hetsco's representations. Enterprise requests this Court remand consideration of this issue to the circuit court.

¶50. In *Trosclair*, the Mississippi Department of Transportation (MDOT) made representations that it had not been responsible for road repairs that had allegedly caused injury to two people. *Trosclair*, 757 So. 2d at 179. One year and ninety days after the injury, it was discovered that MDOT had performed the repairs, and suit was filed. *Id.* MDOT filed a motion to dismiss arguing there was improper presuit notice under the Mississippi Tort Claims Act and that the one-year statute of limitations had expired. *Id.* The injured parties argued that equitable estoppel should apply because they had relied on MDOT's prior representations that a private company had completed the repairs. *Id.* Although the bulk of the Court's ruling focused on substantial compliance with statutory notice requirements, the Court did reason that "there is a material issue of fact as to whether [the injured parties] reasonably relied upon the misrepresentations of" the MDOT employee. *Id.* at 181. The case was reversed and remanded. *Id.*

¶51. In *Aycock*, the Court made a similar ruling on the issue of equitable estoppel. *Aycock*, 369 So. 3d 541-42. The Aycocks attempted to give notice of their claim to the University of Mississippi Medical Center (UMMC) by sending a letter to four hospital executives, none

of whom were the chief executive officer, who was required by statute to receive presuit notice. *Id.* at 536. Eventually, a letter was sent denying the Aycocks' claims. *Id.* at 536-37. The Aycocks filed suit, and UMMC argued for dismissal, claiming that it did not have proper presuit notice and that the statute of limitations had expired. *Id.* at 537.

¶52. A portion of the Court's ruling focused on the Aycocks' claim that equitable estoppel barred the hospital's defenses because "it engaged in a course of conduct that induced reliance by the Aycocks to their detriment." *Id.* at 540. This Court found that a genuine issue of material fact as to equitable estoppel remained because UMMC presented confusing information on its organizational charts, had no clearly identified chief executive officer, responded to the letter acknowledging the "Notice of Claim" letter, sent a formal written denial of the claims and communicated with counsel that the claims were being evaluated. *Id.* at 541.

¶53. Hetsco argues that it merely told Enterprise that it was not aware of a contract. Hetsco, however, contends that its representations are immaterial because Enterprise failed to exercise due diligence to confirm with BP that no contract existed. Hetsco relies on *Stephens v. Equitable Life Assurance Society of the United States*, 850 So. 2d 78 (Miss. 2003), to support its contention that Enterprise is precluded from relying on the doctrine of equitable estoppel because it failed to perform due diligence.

¶54. In *Stephens*, the issue was "a claim of alleged fraud and oral misrepresentations of certain life insurance policies[.]" *Id.* at 79. The Court stated that "the plaintiffs claim that equitable estoppel applies. They argue that issues concerning fraudulent concealment and

23

due diligence in the discovery of the alleged fraud are factual and generally not to be resolved on a Rule 12(b)(6) motion to dismiss." *Id.* at 81. There is no further discussion of equitable estoppel in the case. There is, however, a discussion of fraudulent concealment, which requires due diligence in discovery. *Id.* at 84.

¶55. Enterprise argues that due diligence is not an element of estoppel and that it was not required to ask BP for a copy of an alleged contract. Hetsco does not rely on any other caselaw to support its contention that due diligence is required before making a claim of equitable estoppel. We find no caselaw in which this Court required due diligence as a prerequisite to a claim of estoppel. Hetsco's argument is without merit.

¶56. Hetsco also argues this Court should not consider statements by counsel as evidence for the elements of estoppel. Hetsco relies on *Haggerty v. Foster*, 838 So. 2d 948, 954 (Miss. 2002). The Court in *Haggerty* stated that "[t]he statements of counsel are not evidence, *Walker v. State*, 671 So. 2d 581, 618 (Miss. 1995), and neither are the instructions of the court which should only serve to guide the jury as to the applicable law." *Haggerty*, 838 So. 2d at 954. Hetsco's reliance on this statement is misplaced. In *Haggerty*, the Court was discussing jury instructions—whether a jury verdict had been based on an erroneous legal standard. *Id.* Hetsco does not expound on *Haggerty*, which is not procedurally or factually applicable to this issue.

¶57. Generally, "a party is bound by the acts of his attorney." *Hughes v. State*, 807 So. 2d 426, 431 (Miss. 2001) (internal quotation marks omitted) (quoting *Stringer v. State*, 627 So. 2d 326, 330 (Miss. 1993)); *see Vaughn v. Rettig*, 912 So. 2d 795, 798-99 (Miss. 2005)

(quoting *Terrain Enters., Inc. v. W. Cas. & Sur. Co.*, 774 F.2d 1320, 1322 (5th Cir. 1985)); *Great Atl. & Pac. Tea Co. v. Majure*, 176 Miss. 356, 168 So. 468, 472 (1936). Further, the Court has on other occasions considered statements of attorneys as evidence. *See Lumumba v. State*, 868 So. 2d 1018, 1020 (Miss. 2003) (finding statements of an attorney justified holding the attorney in contempt of court); *Logan v. RedMed, LLC*, 377 So. 3d 956, 965 (Miss. 2024) (statements and conduct of attorneys considered in determining whether parties reached a settlement agreement). In the context of this case, on the issue of estoppel, we find no basis for the representations of Hetsco's counsel to Enterprise's counsel to be excluded from consideration.

¶58. Hetsco also argues that it was not required to notify Enterprise of the discovery of the Proposal for Services and that Enterprise knew or should have known of this standard Proposal for Service contract that it has used in other dealings with Hetsco. These are factual arguments that were not ruled on by the circuit court. They are evidence, however, that genuine issues of material fact remain on the issue of estoppel.

¶59. Equitable estoppel "becomes a question for the trier of fact when there is evidence to support a finding that the plaintiff reasonably relied on the actions of the defendant to his detriment." *Trosclair*, 757 So. 2d at 181 (internal quotation mark omitted) (quoting *Stringer*, 748 So. 2d at 668). Factual discrepancies remain in this case. Further, there is evidence that Enterprise reasonably relied, to its detriment, on the alleged no-contract representation of Hetsco. We remand the issue for further proceedings.

C. *Prohibited Term of the Proposal for Services*

¶60.     Regardless of the ultimate determination as to whether Enterprise is bound by the Proposal for Services and the effects of said determination, we are compelled to note one term of the Proposal for Services that is clearly on its face unenforceable under Mississippi law.  The relevant provision states: "6.5.4  Any lawsuit filed by Owner must be filed within two (2) years from the date that Hetsco provides written notice of completion of work."  This contract term is not enforceable under Mississippi law.  Miss. Code Ann. § 15-1-5 (Rev. 2019); *Pitts v. Watkins*, 905 So. 2d 553, 558 (Miss. 2005).  Enterprise submits that the contractually shortened period "contravenes clear Mississippi public policy and would deprive a Mississippi court of jurisdiction over a matter of which Mississippi has a legitimate interest including the application of its public policy and protecting property in the state." Hetsco argues that under the choice of law provision in the Proposal for Services, Indiana law would control, and Indiana courts would apply the contractually shortened two-year limitation period.

¶61.     Under Mississippi caselaw, our Courts will employ Mississippi procedural law regardless of the substantive law that applies.  *Zurich Am. Ins. Co. v. Goodwin*, 920 So. 2d 427, 433 (Miss. 2006) (citing *Ford v. State Farm Ins. Co.*, 625 So. 2d 792, 793 (Miss. 1993)).  This Court has definitively stated that statutes of limitation are procedural and has refused to enforce contractually shortened limitation periods.  *Goodwin*, 920 So. 2d at 433; *Pitts*, 905 So. 2d at 558; *Covenant Health & Rehab. of Picayune, LP v. Est. of Moulds ex rel. Braddock*, 14 So. 3d 695, 702-703 (Miss. 2009).  The contractually shortened statute of limitations provision is not enforceable.

### D. Forum-Selection Clause

¶62. Both parties make significant arguments regarding the enforceability of the forum-selection clause separate and apart from the initial determination as to whether Enterprise is bound by the Proposal for Services. The applicability of the forum-selection clause, however, is not ripe for determination until it is determined whether the parties are bound by the alleged contract containing the forum-selection clause. Therefore, we decline to address these arguments at this time. We note that the arguments are preserved for review by the circuit court on remand.

## CONCLUSION

¶63. Summary judgment in this case was premature. This Court finds that genuine issues of material fact remain. The decision of the circuit court is reversed on all issues and remanded for further proceedings.

¶64. **REVERSED AND REMANDED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR.**